[368]  *JOSEPH W. JOHNSON, Respondent, *v.* GEORGE GORDON, Appellant.

[1] Constitutional Law—Judicial Powers.—The Constitution of the United States gives no authority to the Supreme Court of the United States to exercise appellate jurisdiction over the State Courts, nor can such authority be derived by. implication, or construction.

Jurisdiction of Federal and State Courts.—The State Courts and the Federal Courts are co-ordinate tribunals, with concurrent jurisdiction in many cases, and the decision of the one in which jurisdiction first attaches, is final and conclusive.

Jurisdiction—Transfer of Causes.—No cause can be transferred from a State Court to any Court of the United States.

[2] Writ of Error or Appeal does not lie from State Court.—Neither a writ of error nor appeal lies to take a case from a State Court to the Supreme Court of the United States.

Appeal from the Third Judicial District.

Mr. J. Heydenfeldt delivered the opinion of the Court. Mr. Ch. J. Murray and Mr. Justice Wells concurred.

The defendant, upon the allegation that he is an alien, moved the Court below to transfer the case to the District Court of the United States, which the Court refused to do, and this refusal is assigned as error. This is the only assignment of error, which requires a serious consideration. With this question we will also consider the application made to this Court, in the case of *Eldridge* v. *Cowell*, *ante* 80, for a writ of error to this Court from the Supreme Court of the United States, which was refused from the Bench.

The question of power between the Federal and State Judiciary, has been fully discussed on both sides, by some of the ablest intellects which our country has produced.

---

[1] Followed in *Sullivan* v. *Cairo*, Oct. T. 1854 (not reported). Construed and distinguished in *Gunn* v. *Bates*, 6 Cal. 271. Commented on in *Taylor* v. *Steamer Columbia*, 5 Cal. 273; *Warner* v. *Uncle Sam*, 9 Cal. 710, 724; *Ferris* v. *Coover*, 11 Cal. 184. Cited in *Piqua Bank* v. *Knoup*, 6 Ohio St. 378.

[2] Overruled in *Greely* v. *Townsend*, 25 Cal. 613. See *Hart* v. *Burnett*, 20 Cal. 169.

In approaching the subject, therefore, after much consultation, we think that little else is left for us to do, but to adopt the opinions of the one side or the other.

At an early period, Hamilton, in the Federalist, and afterwards Story and Johnson, in the case of *Martin's heirs* v. *Hun-*ter's lessee*, have given us the argument    [369] in favor of the extent of power claimed for the Federal Judiciary.   This was followed by the same reasoning in the former Judge's Commentaries on the Constitution.

On the other side of the question we have in the case above stated, the exposition of the Supreme Court of Virginia, and argument of Mr. Calhoun, in his Discourse on the Constitution and Government of the United States.

We have read carefully on both sides, and convinced, as we are, by the reasoning of the latter, we are forced to the adoption of his conclusions.   We have considered the suggestion, that the power claimed has been acquiesced in by most, if not all of the other States, and generally, without any attempt to question or resist it; but we see no sufficient reason in this fact for the surrender of a power which belongs to the sovereignty we represent, involving an assumption of power by another jurisdiction in derogation of that sovereignty.   We think, too, that the acquiescence in this usurpation of the Federal Tribunal under an Act of Congress, not warranted by the Constitution, is not so much owing to a conviction of its propriety, as it is to the high character of the Court and the general correctness of its decisions.

I state as axiomatic the proposition, that the States are original sovereigns, with all powers of sovereignty not expressly delegated by the Federal Compact, and that the Federal Government is a government of none but expressly delegated powers, and that each is absolute and beyond the control or interference of the other, within the sphere of its respective powers.   Looking at both from a common point of view, it would seem singular how either one could stretch its arm in restraint upon the other, except in the event of a palpable usurpation.   And yet this is certainly attempted by the Judiciary Act of 1789.   The Gov-

ernments of both original and delegated powers bear the resemblance in their practical organization of having their powers distributed into Executive, Legislative and Judicial Departments. If the Act in question had given power to the Executive of the United States to control or revise the conduct of the State Executive, or to Con-[370] *gress, the power of assent or dissent to the Acts of a State Legislature, there would have been but one voice in denouncing it; because the practical effect would be more apparent. Yet, in fact, the control attempted to be given to the Federal Court over the State Courts is of just the same importance, and as much in violation of the sovereignty of the States.

"Because," says Mr. Calhoun, "as the laws and the acts of the Goverement and its departments can, if opposed reach the people individually only through the Courts—to whatever extent the Judiciary of the United States is made paramount to that of the individual States, to the same extent will the Legislative and Executive Departments of the Federal Government, and thus the entire Government itself, be made paramount to the Legislative and Executive Departments and the entire Governments of the individual States," And again: "If the State Courts stand in the relation of inferiors to the Supreme Court of the United States, what reason can possibly be assigned, why the other departments of the State Governments—the Legislative and Executive— should not stand in the same relation to the corresponding departments of the Federal Government."

But the question which naturally arises is, whence is this claim of power derived? In the authority to establish a Supreme Court and inferior Courts, the Constitution gives appellate jurisdiction to the former. Not a word is said in reference to the State Courts. The Supreme Court and the inferior Courts to be established by Congress, are alone mentioned. They bear a certain relation to each other, and that relation only is explained in the grant of appellate power to the Supreme Court. It would be curious if any other construction could be justly held, because, in the arrangement of powers between the grantors and grantees

of sovereignty, it might be readily, and was doubtless supposed, that conflicts of opinion would arise as to the extent of the delegated authority. It would not have been strange if the States had expressly reserved to themselves, in case of conflict, the power of deciding the extent of the grant, but it would be an inexplicable anomaly for sovereigns to delegate to another certain of their most *im-   [371] portant rights of sovereignty, and at the same time confer upon the Government of delegated powers, the right to decide for both parties in every case of dispute.

The 6th Article of the Constitution of the United States declares that "this Constitution and the laws of the United States, which shall be made in pursuance thereof, and all treaties made and which shall be made, under the authority of the United States, shall be the supreme law of the land, and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

This is a part of the compact, and by it the Judges of the State Courts are unquestionably bound.

But wherefore was there any necessity for this stipulation, if every question requiring a construction of the Constitution, laws and treaties, the Federal Judiciary had appellate control over that of the States?

If such was the case, the Article quoted would be supererogatory and unmeaning. It ought not and cannot be made so, if we resort to proper and well understood rules of construction. Full effect and meaning must be given to it, and that intention must be ascribed to its framers, which will give entire force and most serious import to all its parts.

It was the concession of a rule, which, at the same time that it was designed to govern the action of the States' Judiciary, operated as a complete recognition of their independence.

The basis for the claim of appellate power to the Supreme Court of the United States over the State Courts, is the assertion that the judicial power of the United States is exclusive, and thus, although jurisdiction is permitted to the

State Courts, it may be withdrawn whenever Congress thinks proper to do so. And Judge Johnson, in the case first cited, argues that "the power to withdraw the exercise of it, includes in it the right to modify, limit and restrain that exercise." His meaning is, as applied to the present question, that Congress may permit the exercise to the State Courts of jurisdiction, which they do not possess, on [372] condition that they submit to *the revisory and removing power provided in the Judiciary Act of 1789.

There is no language in the Constitution which enables the Federal Government to permit the exercise of its own powers by the States under rules established by herself. To imply such a power, construction would have to leap every barrier demanded by common sense and common security. It would be the delegation of a delegated trust, the transfer of power by the one to whom, for good cause, its exercise had been assigned, to the many to whom, for good cause, its exercise had been prohibited—an anomaly in law and morals, a perversion of the rules of that sound reason and good faith, which is universally recognized by man's ordinary and well accustomed apprehension. As between the two parties to the compact, the refusal of the General Government to exercise a granted power, might simply show that it was a power given and not accepted, either because unnecessary within the orbit of her grander functions, or inharmonious to the general scheme of her construction. But if it be objected that the grant imposes an imperative duty to exercise the power, then the refusal or neglect is such a non-user as makes the power necessarily remain in or revert to the States. If this were not so, the non-user of all or many of the granted powers, would involve the destruction of the States.

But is the jurisdiction of the Courts of the United States exclusive? The 10th amendment of the Constitution of the United States says: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people."

Before the adoption of this amendment, a rule of construction as to the division of powers between the Federal and State Governments had been stated by able commentators, and this rule has been ever since acquiesced in. It bears upon its face the evidence of simplicity and straightforward directness.

In number 32 of the Federalist, it is thus stated by Mr. Hamilton: "This exclusive delegation, or rather this alienation of State sovereignty, would only exist in three cases: Where the Constitution in express terms granted an exclusive *authority to the Union; where it granted [373] in one instance an authority to the Union, and in another prohibited the States from exercising a like authority; and where it granted an authority to the Union, to which a similar authority in the States, would be absolutely and totally contradictory and repugnant."

The same rule is repeated by the writer in number 82 of the same work, with a slight difference of phraseology in treating specially of the Judicial Department. And he adds: "And under this impression I shall lay it down as a rule, that the State Courts will restrain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes."

There are no words of exclusion in the language of the Constitution respecting the judicial power granted, and there are no words of prohibition in reference to the exercise of judicial power by the States; if, therefore, the jurisdiction of the United States Court is exclusive, it must be for the reason that the exercise of it by the State Courts is, in the language of Mr. Hamilton, absolutely and totally contradictory and repugnant.

This contradiction and repugnance, if charged to exist on account of a mere general concurrence of jurisdiction, will be found to be more imaginary than real. It can only be supposed to arise in cases of conflict of jurisdiction, and on account of the want of uniformity in decisions. At least, these seem to be the basis of all the argument in favor of the exclusive power of the Federal Courts. Both of these are incident to the judicial system of every civilized people.

The first has arisen from the earliest times within the same political jurisdiction. It had a remarkable period in the disputes between the Courts of Chancery.and Common Law in England, and has never since produced such bitter feuds. There, however, as in most cases, the conflict arose not only from the claim of jurisdiction by each, but in its denial by each to the other. Here all difficulty is modified, if not entirely removed, by the admission of a concurrence of jurisdiction and the recognition of the firmly established [374] rule of the common law, that in all cases of con-*current jurisdiction, the Court which first has possession of the subject must decide it.

As to uniformity of decision, no sound reasoner will pretend that it is attainable.

Every State of the Union has her own Court; we know that the decisions of State Courts are various, and upon important questions differ widely from one another. This want of uniformity in reference to subjects within the exclusive jurisdiction of the State Courts is certainly not less hurtful or inconvenient than it would be in regard to those matters in which the Courts of the United States have concurrent jurisdiction. But even in regard to the latter, the Act of 1789 fails to secure uniformity.

The appeal is only allowed where the decision of the State Court is adverse to the law of Congress or treaty, etc.

If, therefore, one State affirms the validity of a law of Congress, and another State declares it void, if the Supreme Court of the United States sustains the latter, the rule will be different in the two States. Indeed, as long as the age of the world continues to be one of great intellectual vigor, uniformity of opinion is and must be unattainable. It is the chimera of an unhealthy brain, because it is incompatible with the known characteristics of the human intellect. To secure it in a few given cases, while we lack it for all the rest, is not an object of sufficient magnitude to overturn elementary doctrines of construction, and to destroy the harmony of a rule which determines satisfactorily the principles of the organization of a complex system of Government.

For these reasons we hold:

1st.   That no cause can be transferred from a State Court to any Court of the United States.

2d.   That neither a writ of error nor appeal lies to take a case from a State Court to the Supreme Court of the United States.

Judgment affirmed.