## FERRIS *v.* COOVER.

The twenty-fifth section of the Act of Congress of 1789, commonly called the Judiciary Act, is constitutional.

In the exposition of Constitutions, as of inferior laws, the solemn, deliberate, and long-settled precedents of Courts, and the practice and acquiescence of Governments and people, should possess controlling weight.

This Court does not, however, recognize an unlimited right of appeal from its decisions to the Supreme Court of the United States. The Act gives no such right. The appellate power of the Supreme Court in this respect is strictly limited to the cases given in the Act. Like any other special authority, it is to be strictly pursued, and the record must show upon its face the facts which give the power. In a case falling within the provisions of section twenty-five, this Court acknowledges the right of appeal, but denies it in all other cases.

On application for a citation on production of a writ of error from the Clerk of the United States Court, and for a stay of proceedings in the Supreme Court of this State, the duty and power of issuing the citation devolves on the Chief Justice, as a chamber proceeding, and he must see, when he is required to act or authorized to proceed under the Federal law, that he is within that law.

A contrary doctrine would permit writs of error in every case, whether civil or criminal, and would delay the whole machinery of justice in the Courts of the State in every case, however destitute of any right to a writ of error.

An action of ejectment, raising the question whether a grant made by the Mexican

Government passed title to the tract within the limits of the grant, is not a case in which a writ of error lies under the Judiciary Act.

The judiciary system created by the Constitution of the United States is entirely disconnected with, and independent of, the Judiciary of the several States.  *Per Terry, C. J.*

The appellate jurisdiction of the Supreme Court of the United States, conferred by the second section of article three of the Constitution does not extend to the State Courts, but is confined to the inferior Courts mentioned in the preceding section.  *Ib.*

There is no provision in the Federal Constitution from which a supervisory power over the State Courts can be vested in the Supreme Court of the United States by any fair or legitimate implication or construction.  *Ib.*

In a large class of cases the jurisdiction of the Federal and State Judiciary is concurrent, and in all such cases the judgment of the higher Courts of the system first acquiring jurisdiction is final and conclusive.  *Ib.*

The Government of the United States is one of delegated powers ; the right to decide ultimately upon the extent of powers granted has not been delegated to the United States, nor prohibited to the States, and is reserved to the States by the provisions of the tenth amendment to the Constitution ; and therefore, the decision of the Supreme Court of the United States on such questions is not binding in the State Courts.  *Ib.*

The right and jurisdiction to determine finally all controversies between her citizens, and all conflicting claims to property within her limits, is an essential element of sovereignty, which was possessed by each State before the adoption of the Constitution, and this right was not surrendered by that compact.

In answer to the suggestion that this question of jurisdiction is, so far as California is concerned, settled by the Act of the Legislature of 1855, it may only be said, that there is no provision in the Constitution which delegates to the Legislature of California the power to enlarge the jurisdiction of the Federal Courts.  *Ib.*

MOTION for a citation to the respondent, on a writ of error from the United States Circuit Court for California to this Court.

A final judgment was rendered by the Court in the above case on the eighteenth ultimo, affirming the judgment of the Court below. For the facts, see 10 Cal. R. 589.

Afterwards the appellant obtained from the Clerk of the United States Circuit Court for California a writ of error, commanding the record to be sent before the Supreme Court of the United States, in order that the judgment of this Court may be there reviewed, and applied to one of the Associate Justices of this Court to fix the necessary bond, grant a stay of proceedings, and award a citation to the respondent to appear before the Supreme Court of the United States, and maintain the validity of his judgment. The Justice applied to ordered that the application should be argued before the Court, upon notice to respondent to show cause why it should not be granted.

The questions raised upon the argument of this motion are : *First,*

the constitutionality of the twenty-fifth section of the Judiciary Act of 1789, which provides for an appeal from the highest State tribunals to the Supreme Court of the United States ; *second,* whether, admitting the validity of the Act, the case under consideration is within its provisions; and *third,* whether the authority to determine this latter question can be properly exercised by this Court.

*John H. McKune and* —— *Weeks* for the motion.

*Thos. Sunderland, Contra.*

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

In this case, after the rendition of a final judgment, the defendant has moved the Court, or one of the Justices thereof, to grant a citation, upon his production of a writ of error from the Clerk of the Circuit Court of the United States for the District of California, and for a stay of proceedings under the judgment rendered by us.

The majority of this Court acknowledge the validity of the Act of Congress of the United States passed in 1789, commonly called the Judiciary Act, the twenty-fifth section of which is as follows :

" *And be it further enacted,* That a final judgment or decree in any suit, in the highest Court of Law or Equity of a State in which a decision in the suit could be had, where is drawn in question the validity of a treaty or statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of such their validity, or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up ŏr claimed by either party, under such clause of the said Constitution, treaty, statute, or commission, may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error, the citation being signed by the Chief Justice, or Judge, or Chancellor of the Court rendering or passing the judgment or decree complained of, or

by a Justice of the Supreme Court of the United States, in the same manner and under the same regulations, and the writ shall have the same effect as if the judgment or decree complained of had been rendered or passed in a Circuit Court, and the proceeding upon the reversal shall also be the same, except that the Supreme Court, instead of remanding the cause for a final decision as before provided, may, at their discretion, if the cause shall have been once remanded before, proceed to a final decision of the same and award execution. But no other error shall be assigned or regarded as a ground of reversal in any such case as aforesaid than such as appears on the face of the record, and immediately respects the before mentioned questions of validity or construction of the said Constitution, treaties, commissions, or authorities in dispute."

We do not propose, nor is it necessary for us to go into an examination of the question so fully and elaborately discussed, as to the constitutionality of this section of the Act. The argument upon that question has long since been exhausted. The intellects and the various and profound learning of the ablest jurists and statesmen of the Union, on one side or the other of this mooted question, have been called into requisition, and nothing new could now be said either in support of, or in opposition to, the validity of this law. It is enough for us to say that a long course of adjudication by Courts of the highest authority, State and National, commencing almost from the foundation of the Government, and the acquiescence of nearly all the State Governments, in all of their departments, have given to this doctrine a recognition so strong and authentic that we feel no disposition to deny it at this late day, even if the reasons for such denial were more cogent than they seem to us to be. We recognize the rule that, in the exposition of Constitutions, as of inferior laws, the solemn, deliberate, and long-settled precedents of Courts, and the practice and acquiescence of Governments and people should possess controlling weight. With all proper deference to opposing views, it appears to us that a just respect to such high authority, especially in cases of doubt, ought to conclude the action of Courts in favor of the principle so established, even when the individual opinions of the judges would be different were the question *res integra*. In this instance, we do not feel warranted, in the

Ferris *v.* Coover.

face of the elaborate and learned reasonings and repeated adjudications of the highest Courts and the most eminent Judges of the Union, to hold that clause of the Act *clearly* unconstitutional which they have pronounced *clearly* constitutional. Nor are we insensible to the benefits which flow from the decision which they have made. That there should be a central tribunal, having power to give authoritative exposition to the Constitution, and laws, and treaties of the United States, and which should also possess the power to secure to every citizen the rights to which he is entitled under them, seems to us highly expedient. The value of uniformity of decisions where the Constitution and laws of the Federal Government are to be expounded in cases of individual rights, and the importance of the principle that every citizen of the United States know the extent, and be protected by a tribunal of the highest authority and free from local prejudices or passions in the enjoyment of all the rights, exemptions and privileges with which the Constitution and laws of the Union invest him, cannot easily be exaggerated. Indeed, in order to render the Constitution and laws of the Federal Government the same things to the people of the United States, it is necessary that they receive their ultimate construction from the same tribunal; for there is but little practical difference between two or more different Constitutions and one Constitution variously and differently construed.

But in holding the Judiciary Act of 1789 to be constitutional, we by no means recognize an unlimited right of appeal from the decisions of this Court to the Supreme Court of the United States. That Act gives no such right. The appellate power of the Supreme Court in this respect is strictly limited to the cases given in the Act. Like any other special authority, it is to be strictly pursued, and the record must show upon its face the facts which give the power. In a case falling within the provisions of the section quoted, we acknowledge the right of appeal. We deny it in all other cases. By the provisions of this section, in such cases, the Chief Justice of this Court is authorized to issue the citation. That duty or that power is cast upon him alone. The Associate Justices have nothing to do in the premises. The Act is his, as a chamber proceeding. But still the power is, in its nature, in some degree judicial. He must see, when he is required to act or

authorized to proceed under the Federal law, that he is within the law. If there is much doubt or question as to the jurisdiction, he might, in his discretion, (and perhaps it would be advisable) issue the citation, leaving the fact of jurisdiction to be determined by the Supreme Court of the United States. This is what we understand Mr. Justice Johnson to mean in the case of Buel *v.* Van Ness (8 Wheat. 312). He says : " We see no reason why it should be so expressed. The writ of error is the act of the Court; its object is to cite the parties to this Court, and to bring up the record. How else is this Court to ascertain whether the judgment be final ? Nor can there be any danger of its being hastily or erroneously used, since it must be allowed either by the presiding Judge of the State Court or a Judge of the Supreme Court of the United States."

A contrary doctrine would be fraught with enormous and intolerable evils. If an appeal, with stay of execution, be matter of absolute right, then every case, civil or criminal, decided by the highest Court having jurisdiction in the State, could be taken up to the Federal Capital, and all proceedings suspended until its return. In every criminal case, the pretext would be that the law was *ex post facto.* It would be no answer to say that the record showed plainly the contrary ; the reply to this would be, " The Supreme Court is to decide that question." And every civil case might be carried thither upon the ground of a supposed or asserted repugnance to some provision of the Federal Constitution or law, or of some treaty. That damages might be given for frivolous appeals would be no adequate protection against them, and in criminal cases no protection at all. The Supreme Court of the United States holds but one term in each year, and from the embarrassments and delays attending the taking of cases from this Court to that, especially in criminal cases, the recognition of this principle would produce the worst possible results. If the Chief Justice of this Court should err in deciding the case not to be appealable, the jurisdiction of the Supreme Court of the United States would not thereby be ousted. That Court could, on the inspection of the record, grant the writ, or issue the citation, and proceed to hear and determine the case.

In the present case we see no pretext for contending that this case is within the Act of 1789. No question is made by the record that

Ferris *v.* Coover.

any right claimed under the Constitution or under any law of Congress has been called in review and denied.    The fact intimated that this may possibly be public land, if not the land of the plaintiff, is not a sufficient suggestion even to base an argument upon in favor of the jurisdiction.    The authorities cited by the appellant only go to the extent of showing that where the record shows that the question giving jurisdiction must *necessarily* have been passed upon, in or by the judgment of the Court, the Supreme Court may take jurisdiction, although it does not appear in so many words that it was so passed upon, and decided against the validity of the claim set up.    But here the record shows no such thing.    The case before the Court is simply a claim for land made by one man and denied by another ; the main question made being whether a grant of land by a Mexican Governor passed title to the land within the limits of the grant.    The defendant nowhere sets up a law of the United States, the exemption privilege, or claim under which has been denied to him.    If this record be the subject of appeal to the Supreme Court, we do not see why every ejectment suit would not be, and indeed, every other suit.    For the pleadings, proofs, judgments and decision here do not put in issue any right or claim under any Federal law, organic or legislative.

Of this matter of issuing the citation, we, as a portion of the Supreme Court, or as Associate Justices of this Court, have nothing to do.    But as the question was argued before us in open Court, and our opinions requested, we have thought proper to give our views upon the matter.

TERRY, C. J., after stating the facts, delivered the following dissenting opinion :

The questions raised upon the argument of this motion are : *First*, the constitutionality of the 25th section of the Judiciary Act of 1789, which provides for an appeal from the highest State tribunals to the Supreme Court of the United States ; *Second*, whether, admitting the validity of the Act, the case under consideration is within its provisions ; and *Third*, whether the authority to determine this latter question can be properly exercised by this Court.

While all the members of the Court agree as to the conclusion at

which we have arrived, I have the misfortune to differ with my associates upon the first and third propositions.

I think, if we admit the appellate jurisdiction of the Supreme Court of the United States over the judgments and decisions of this Court, it must follow that the province of determining the cases in which the jurisdiction can be exercised belongs to the appellate Court, and that a contrary doctrine would involve the inconsistency of allowing the jurisdiction of the superior to be defeated by the action of the inferior tribunal.

The constitutionality of the Judiciary Act has been the subject of much controversy between Federal Courts and the Supreme Courts of several of the States. Able arguments on both sides have been delivered from the Bench, by lawyers who have had few superiors in any age or country, and whose thorough and laborious investigations have so nearly exhausted the subject as to leave little to be said in support of either position, which has not already been so well expressed as to render presumptuous an attempt to add to the force and cogency of the reasoning. The controversy arose in the case of Martin *v.* Hunter, lessee, at a time when the judicial offices of the United States were filled by men who were identified with the Federal party.

The principles of this party, which favored a liberal interpretation of the provisions of the Constitution in favor of the powers of the General Government, found a zealous and able exponent in Mr. Justice Story, (see 1 Wheaton, 298) while those who contended for a strict construction of the instrument were no less ably represented by Justice Roane, of the Virginia Court of Appeals. (4 Mumford, page 1.)

The judgment of the Virginia Court of Appeals in the case referred to had been reversed by the Supreme Court of the United States, and the cause remanded to the State Court, with directions as to future proceedings. After full argument and mature deliberation, the Court of Appeals unanimously refused to obey this mandate; each of the Judges filed an opinion in the case, and the opinion of the Court was entered as follows, " The Court is unanimously of the opinion that the appellate power of the Supreme Court of the United States does not extend to this Court, under a sound construction of the

Constitution of the United States; that so much of the twenty-fifth section of the Act of Congress to establish the judicial Courts of the United States as extends the appellate jurisdiction of the Supreme Court to this Court is not in pursuance of the Constitution of the United States; that the writ of error in this case was improvidently allowed under the authority of that Act; that the proceedings thereon in the Supreme Court were *coram non judice* in relation to this Court; and that obedience to its mandate be declined by this Court." The case was again carried to the Supreme Court of the United States, where the judgment of the Court of Appeals was reversed; but no attempt was made to enforce obedience to the judgment on the part of the State Court, which remained contumacious. On the contrary, it was expressly admitted that that Court had no power to do so. (See opinion of Mr. Justice Johnson.) So that, according to the authority of that case, the judicial system of the United States presents the strange anomaly of a Court of final resort, vested with full and ample appellate jurisdiction, without the power of compelling obedience to its judgments and process on the part of the inferior tribunals. The claim of jurisdiction asserted by the Federal Courts in Martin *v.* Hunter's Lessee was reaffirmed in later cases by the same tribunal, and with a few exceptions has been acquiesced in by the Courts of the various States, generally on the ground of *stare decisis*.

It has never been admitted in Virginia, has always been repudiated by Georgia, and has lately been questioned in several other States. The decisions of the United States Supreme Court, on this question, embody the political principles of a party which has passed away. The reasoning by which it is attempted to sustain them is based upon rules of construction now universally regarded as unwarranted by the letter or spirit of the Constitution, and directly opposed to those adopted by the same tribunal in the late case of Dred Scott *v.* Sanford, (19 Howard) and in a more recent case in 20 Howard, in which the admiralty jurisdiction of State Courts is admitted, notwithstanding the 9th section of the Judiciary Act.

The force and authority of the opinions of the Supreme Court of the United States upon the question of jurisdiction, as well as all

others of a political nature, is much weakened by the consideration that the political sentiments of the Judges in such cases necessarily gave direction to the decisions of the Court. The Legislative and Executive power of the Government had passed, or was rapidly passing into the hands of men entertaining opposite principles. Regarding the Judicial as the conservative department; believing the possession by the General Government of greater powers than those expressly granted by the Constitution to be absolutely necessary to its stability, they sought, by a latitudinarian construction of its provisions, to remedy the defects in that instrument, and by a course of judicial decisions to give direction to the future policy of the Union. In order to accomplish this end, the Court almost invariably upheld every assumption of power by the General Government, (however at variance with the limitations of the Constitution) including the alien and sedition law, the embargo Act, the charter of a United States Bank, and a retrospective bankrupt law ; the constitutionality of which Acts is supported by the same course of reasoning, and the same *liberal* construction of the *implied* powers of Congress, as is applied to the Judiciary Act of 1789.

All the arguments adduced in favor of the claim of jurisdiction on the part of the Federal Court are answered, and the unconstitutionality of the 25th section of the Judiciary Act, to my mind, conclusively established, by the able opinions in Hunter *v.* Martin, 4 Mumford ; Padelford, Fay & Co. *v.* Mayor and Aldermen of Savannah, 14 Geo. 438 ; Johnson *v.* Gordon, 4 Cal. 368 ; and the very elaborate opinion of Mr. Chief Justice Bartley, in the case of the Piqua Bank *v.* The Treasurer of Miami County, 6 Ohio State Rep. 342, in which all the authorities are collated.

The results of these authorities are :

1. That the judiciary system created by the Constitution of the United States is entirely disconnected with and independent of the judiciary of the several States.

2. That the appellate jurisdiction of the Supreme Court of the United States, conferred by the 2d section of article 3d of the Constitution, does not extend to the State Courts, but is confined to the inferior Courts mentioned in the preceding section.

Ferris v. Coover.

3. That there is no provision in the Federal Constitution from which a supervisory power over the State Courts can be vested in the Supreme Court of the United States, by any fair or legitimate implication or construction.

4. That in a large class of cases the jurisdiction of the Federal and State Judiciary is concurrent, and in all such cases the judgment of the highest Courts of the system first acquiring jurisdiction is final and conclusive.

5. That the Government of the United States is one of delegated powers ; that the right to decide ultimately upon the extent of powers granted has not been delegated to the United States, nor prohibited to the States, and is reserved to the States by the provisions of the tenth amendment to the Constitution ; and therefore, the decision of the Supreme Court of the United States on such questions is not binding on the State Courts.

6. That the right and jurisdiction to determine finally all controversies between her citizens, and all conflicting claims to property within her limits, is an essential element of sovereignty, which was possessed by each State before the adoption of the Constitution, and this right was not surrendered by that compact.

In answer to the suggestion that this question of jurisdiction is, so far as California is concerned, settled by the Act of the Legislature of 1855, I have only to say that there is no provision in the Constitution which delegates to the Legislature of California the power to enlarge the jurisdiction of the Federal Courts.

The question here raised was presented to the Court in Gordon v. Johnson (reported in 4 Cal. 368). In the opinion delivered in that case all the Judges who at the time constituted the Supreme Court of California concurred. Of the correctness of the principles there announced I am entirely satisfied. Indeed, had the question been presented for the first time, the soundness of the opinion would scarcely have been questioned. As an original question, the entire independence of the State Judiciary is generally conceded by the bar : almost the only argument now advanced in support of the appellate power of the Federal Courts is that founded on expediency and long acquiescence.

12

Ferris *v.* Coover.

The expediency and policy of providing a tribunal with general appellate jurisdiction over a certain class of cases, whether they were originally instituted in the State or Federal Courts, in order that uniformity of decisions in such cases might be secured, was a question for the Convention which framed the Constitution; it is sufficient for me that they made no such provision. But it is said, the decision of the Supreme Court of the United States upon the point has so long been acquiesced in that it ought not now to be disturbed.

The answer to this proposition is, that if the doctrine that all usurpations of power which have been unwillingly acquiesced in for a length of time ripen by prescription into law had been acted on in the past, the principles of civil and religious liberty would have been as little understood, and the rights of man as little regarded in the nineteenth as in the tenth century; and if adopted for the future, will be an effectual bar to all progress.

This is not, in my opinion, one of those questions to which the doctrine of *stare decisis* ought to be applied. No interests which have grown up, no rights of property which may have been acquired under the rule established, would be endangered or lost by its abrogation. The effect of the contrary doctrine would be felt only by future litigants, and could not by possibility have a retroactive operation.

Hoary usurpations of power and jurisdiction on the part of the Federal Judiciary, or time-honored encroachments on the reserved rights of the sovereign States, are entitled to no additional respect on account of their antiquity, and should be as little regarded by the State tribunals as if they were but things of yesterday.

It is the duty of Judges to decide all questions which arise in cases before them according to the Constitution and laws; and while the decisions of other tribunals should be respectfully considered, and all due weight given to them to which they may be entitled by reason of the learning and ability of the tribunal from which they emanate, yet respect for their authority, or a rigid adherence to precedent, should never be permitted to influence a Judge to go counter to his own convictions of the requirements of the Constitution and laws. For these reasons I think the application should be denied.