COLL, DEMANDANTE Y APELANTE, *v.* GANDÍA, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito de daños y perjuicios por libelo.

No. 2300.—Resuelto en julio 28, 1921.

DAÑOS Y PERJUICIOS POR LIBELO — COMUNICACIÓN PRIVILEGIADA — CAUSA DE ACCIÓN.—En una acción por daños y perjuicios por libelo, cuando éste se alega haber sido cometido en un documento *prima facie* privilegiado, como lo es una comunicación dirigida a una de las Cámaras de la Legislatura, es obligación del demandante, para que la demanda pueda decirse que contiene hechos suficientes para determinar una causa de acción, destruir con las alegaciones de la misma la presunción que tiene el documento de privilegiado, y si ésto no se hace debe prosperar una excepción previa de falta de hechos.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. G. Cruzado.*

Abogado del apelado: *Sr. J. Guzmán Benítez.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

La corte de distrito desestimó una demanda de libelo des-

pués de declarar con lugar la excepción previa por falta de hechos suficientes para constituir una causa de acción.

Uno de los fundamentos en el cual basó el juez sentenciador su resolución fué que "el escrito dirigido por el señor Pedro Gandía a la Cámara de Representantes de Puerto Rico y que forma parte de la demanda es de carácter privilegiado." El único error alegado es que la Corte de Distrito de San Juan, Sección Primera, cometió error al declarar con lugar la excepción previa de falta de causa de acción, fundando su sentencia en el hecho de que el escrito unido a la demanda y que fué dirigido por Pedro Gandía Córdova a la Cámara de Representantes tiene el carácter de privilegiado, y al no apreciar dicha circunstancia como materia de defensa.

El demandante alegó:

"I. Que es mayor de edad, casado, y vecino de San Juan, que ejerce la profesión de abogado y notario en la Isla de Puerto Rico, y especialmente ante esta honorable corte; y que también es miembro de la Cámara de Representantes de Puerto Rico, habiendo sido electo para dicho cargo por el sufragio de sus conciudadanos en las últimas elecciones generales celebradas en Puerto Rico.

"II. Que en su calidad de abogado el demandante representa a ciertos clientes ante las cortes de Puerto Rico en pleitos y procedimientos que contra ellos ha entablado el demandado Pedro Gandía; y entre otros, en un procedimiento de certiorari que el demandante, en su carácter de abogado de la corporación Porto Rico Fertilizer Company, entabló en la Corte Suprema de Puerto Rico contra cierta orden de la Sección Segunda de la Corte de Distrito de San Juan.

"III. Que el demandante, además de miembro de la Cámara de Representantes es Presidente del Comité Jurídico Civil de la misma, uno de los más importantes de la Legislatura; y en su carácter de abogado representa un número de importantes compañías y corporaciones y está al frente de un despacho de importancia y reputación considerables.

"IV. Que en un pleito seguido por el demandado Pedro Gandía contra la corporación Porto Rico Fertilizer Company, el demandante, en representación de dicha corporación, resistió con todo éxito las pretensiones del demandado sobre examen de los libros de la corpora-

ción, excepto en la forma en que la misma corporación aceptaba dicho examen; y habiéndose dictado cierta orden que el demandante consideraba perjudicial para los intereses de su cliente, el dicho demandante solicitó del Tribunal Supremo de Puerto Rico el auto de certiorari a que se refiere el hecho II de la demanda, el cual no fué expedido por encontrarse en vacaciones dicho alto tribunal.

"V. Que por esa fecha, y especialmente el día 5 de septiembre de 1917 se encontraba en sesión la Asamblea Legislativa de Puerto Rico; y en la Cámara de Representantes el secretario de la misma dió lectura a un escrito, cuya copia certificada se une y hace parte de esta demanda, firmado por Pedro Gandía, el demandado, en cuyo escrito, de una manera falsa y maliciosa, a sabiendas y sin causa probable para ello, el demandado Gandía acusaba al demandante de utilizar su carácter de Representante para tratar de enmendar una ley en vigor en Puerto Rico con el único fin de su provecho personal y del provecho de su cliente.

"VI. Que semejante escrito constituye una imputación falsa y maliciosa, hecha a sabiendas por el demandado contra el demandante sin causa probable para ello y con el único fin de perjudicarle y causarle daño personal en su reputación como abogado y como miembro de la Cámara de Representantes.

"VII. Que la conducta del demandado en la forma expuesta en esta demanda ha causado al demandante daños y perjuicios en la suma de cincuenta mil dollars." El escrito de referencia es como sigue:

" 'A la Honorable Cámara de Representantes de Puerto Rico.—El que suscribe, ciudadano americano, comerciante y vecino de San Juan, a la Cámara de Representantes de la Legislatura de Puerto Rico, respetuosamente expone que según ha llegado a su noticia el Representante Sr. Lastra Charriez ha presentado ante la Honorable Cámara, el siguiente proyecto de ley:

" 'P. de la C. 75.—En la Cámara de Representantes de Puerto Rico.—Agosto 30, 1917.—El Sr. Lastra Charriez presentó el siguiente proyecto de ley: Para enmendar la "Ley para autorizar autos de certiorari," aprobada en 10 de marzo de 1904.'—Decrétese por la Asamblea Legislativa de Puerto Rico.—Sección 1.—La sección 2 de la ley para autorizar autos de certiorari, aprobada en 10 de marzo de 1904 se entenderá redactada del modo siguiente:—Sección 2.—El Tribunal Supremo o cualquiera de sus jueces y las cortes de distrito respectivas de Puerto Rico, quedan por la presente autorizadas y con facultad para expedir autos de certiorari.—Sección 2.—Toda ley o parte de ley que se oponga a la presente queda por ésta derogada.—

Sección 3.—Esta ley empezará a regir inmediatamente después de su aprobación, teniendo por objeto urgente el que el juez actuante durante este término de vacaciones de dicho tribunal, tenga la facultad que por esta ley se concede.'

''El que suscribe sabe también que entre los representantes que constituyen la comisión de legislación de esta Honorable Cámara, está don Cayetano Coll y Cuchí quien no hace muchos días hallándose en la Secretaría del Tribunal Supremo y en vista de no haberse expedido seguidamente el auto de certiorari que solicitó en el pleito a que más adelante se hace referencia, manifestó que iba a presentar un proyecto de ley introduciendo una modificación en el vigente estatuto sobre certiorari; y el exponente puede afirmar que la aprobación de dicho proyecto de ley interesa muy especialmente al referido Sr. Coll y Cuchí como abogado de la 'Porto Rico Fertilizer Company,' en el pleito antes mencionado que es el No. 9463 que el suscribiente como demandante sigue contra la citada corporación ante la Sección Primera de la Corte de Distrito de San Juan, en cobro de dinero y para obtener otros remedios; y que el beneficio que dicho abogado y sus clientes han de obtener de la aprobación del expresado proyecto de ley, es el de obstaculizar y demorar la inspección de los libros de la corporación demandada la cual inspección solicitada por el que suscribe desde febrero del año en curso, ha encontrado enormes dificultades para ser discutida por los obstáculos y demoras opuestas por el abogado Sr. Coll y Cuchí, incluso el privilegio como delegado que alegó dicho señor hasta que al fin vino a ser decretada la diligencia de que se trata por resolución de la corte de distrito de fecha 7 de junio del año en curso.

''Dictada esta resolución, todavía hasta el momento actual no ha podido verificar dicha inspección, a pesar de las reiteradas órdenes de la corte y de los apercibimientos de castigarse la desobediencia por desacato, en virtud de que el Sr. Coll y Cuchí sistemáticamente ha impedido el cumplimiento de dicha orden judicial, llegando a oponerse a ella personalmente con varios pretextos y a guardar en su oficina de abogado los libros que deberán ser objeto de la inspección.

''Antes de decidirse el Sr. Coll y Cuchí a proceder en tal forma, acudió al Hon. Juez Hutchinson, del Tribunal Supremo, con una solicitud de certiorari para que se suspendiese el procedimiento de la inspección decretada por la corte; pero como el Hon. Juez Hutchison transfirió dicha solicitud para dar cuenta con ella al Tribunal Supremo, que por hallarse hoy en vacaciones no se reunirá hasta el 5 de noviembre próximo el Sr. Coll y Cuchí ahora se propone obtener

una ley que autorice la expedición del auto de certiorari, durante estas vacaciones, para que queden paralizadas hasta el referido noviembre las diligencias que insistentemente viene practicando el que suscribe a fin de que se verifique la inspección decretada por la corte.

"Demostrado, pues, que la medida legislativa a que me refiero se propone una ventaja personal para el abogado Cayetano Coll y Cuchí y su cliente la Porto Rico Fertilizer Company, con gravísimos perjuicios de los intereses del suscribiente, éste suplica a la Honorable Cámara de Representantes, que antes de aprobar el·dictamen favorable de la Comisión de Legislación, en el caso de que si resulte, se sirva ordenar una investigación para el esclarecimiento de los antecedentes de que dejo hecho mérito y permitir al que comparece, si la Honorable Cámara lo estime necesario, informar sobre los extremos indicados a la comisión que se designe por conducto del abogado que representa al exponente en el pleito de que se trata.—San Juan, P. R., septiembre 5 de 1917.—Muy respetuosamente, (Fdo.) Pedro Gandía Córdova.''

El apelante para sostener su contención sólo cita tres autoridades, a saber: *Gudger* v. *Penland,* 23 A. S. R. 73; *Conroy* v. *Pittsburg Times,* "resuelto por la Corte Suprema de Pennsylvania en enero 5 de 1891," y *Dixon* v. *Allen,* 11 Cal. 179.

El primero de los casos mencionados era una "apelación contra una resolución desestimando una excepción formulada a una demanda por calumnia en la que se alegaba que el demandado había imputado de palabras al demandante el hecho de haber jurado ciertas falsedades mientras se le examinaba como testigo en cierta causa criminal.''

La corte se expresó en los siguientes términos (bastardilla nuestra):

"La alegación del abogado del demandado de que las palabras calumniosas parecen haber sido empleadas en el curso de una investigación judicial y que de acuerdo con el principio enunciado en el caso de *Nissen* v. *Crammer,* 104 N. C. 564, el demandado está absolutamente exento de responsabilidad, *no encuentra apoyo en las alegaciones de la demanda que han sido admitidas. No consta afirmativamente en la demanda* si el lenguaje imputado al demandado en cual-

quiera de los párrafos de la demanda, en que se alega el lenguaje específico en que el cargo se hizo en diferentes ocasiones, fué empleado en el momento del juicio de una causa criminal o después. El demandante no.estaba obligado *a negar la idea* de que las palabras calumniosas *per se* fueron pronunciadas bajo tales circunstancias que el demandado estaría protegido de responsabilidad por el fundamento de un privilegio. El hecho, *de ser cierto,* de que las palabras fueron pronunciadas en el curso de un procedimiento judicial. y eran esenciales y pertinentes a la cuestión ante la corte debe ser alegado en la contestación si el demandado desea aprovecharse él mismo de esto en su defensa, *a menos que sea oficiosamente alegado en la demanda.*

"*Si hubiera sido alegado* que el lenguaje fué empleado cuando el demandado estaba sometido al examen como testigo en el juicio de la causa, *todavía no aparece* que el demandado sostenía tal relación con el denunciante que le proporcionara *absoluta* o *presuntiva* protección contra una responsabilidad: *Nissen* v. *Cramer,* 104 N. C. 574; *Shelfer* v. *Gooding,* 2 *Jones,* 175; *Brigge* v. *Byrd,* 12 *Ired.* 380. *Nada ha sido alegado en la demanda* que sostenga la contención del abogado del demandado de que la acción no puede ser sostenida."

El caso de Conroy citado por la fecha solamente, ha sido reportado en el tomo 21 Atl. en la página 154. El demandante en ese caso ofreció como prueba un artículo de un periódico cuyo tenor general se indicaba en las frases con que el mismo comienza, que parecen ser el encabezamiento aunque no se expresa así, las cuales son las siguientes:

"El lupanar tiene que marcharse. La mala gente abandona el pueblo. Otro proyecto. del viejo Godfrey presentado. Bill Lannen en la cárcel. 'Humpy' Long cierra. Ella Godfrey regresa."

La parte del artículo que se refiere al demandante es la siguiente:

"En el número 2 de la cuadra 'Diamond' Mike Conroy tiene establecido un lugar de malas compañías que, en todos sus particulares, es tan malo como el que tenía establecido Tom O.'Brien. En nada le han afectado las manifestaciones del Alcalde McCallin en favor de la moralidad y del buen orden. Las malas personas que han sido excluídas de otros sitios de la vecindad todos se han reunido en el

sitio de Conroy y se les ha dado buena acogida.   Un bailarín de una pierna ha sido empleado y da unas noches horribles en sus tentativas de pasar el tiempo a los acordes del desgraciado instrumento que fué una vez un piano.   Conroy también tiene la costumbre de cerrar sus puertas de enfrente a eso de la media noche y tener la reunión en el cuarto de atrás hasta cerca de la mañana o hasta que se les acaba el dinero o termina su cerveza.   Todas las noches en este sitio pueden verse ladrones, pujiles, timadores y la clase más mala de mujeres abandonadas.   El bailarín de zapateo en una pierna empleado en este sitio es un conocido timador.   Ha cumplido varios años en el presidio por robos en la carretera, y hace pocos meses que ha sido puesto en libertad.   Conroy no tiene que sorprenderse de ver una delegación de la policía del Alcalde McCallin pasar por ese sitio alguna vez y quedarse lo necesario para atender al propietario y a sus clientes.''

Ninguna cuestión de privilegio absoluto parece haber sido promovida y claramente que tal cuestión no pudo haberla tenido en cuenta la corte.   El demandado alegó, sin embargo, ''que el artículo era una comunicación privilegiada y solicitó un sobreseimiento obligatorio.''   Que lo que se dijo en la opinión tenía referencia solamente a un privilegio restringido aparece del siguiente resumen del primer párrafo, el cual es como sigue (bastardilla nuestra):

''La publicación de que el apelante se queja imputa una ofensa denunciable y es libelosa *per se.*   Puede admitirse que *pertenece a la clase de privilegios restringidos.   En tales casos* es corriente decir que la demandante debe probar la malicia expresa.   Temo, sin embargo, que la declaración más exacta de la ley es que *en tales casos* no existe presunción *prima facie* de malicia de la publicación.   Debe haber alguna prueba fuera del mero hecho de la publicación, pero nada se exige en cuanto a cuál ha de ser la forma de la prueba.   Puede ser intrínseca, según la forma y el tono del artículo.''

El único caso de *Dixon* v. *Allen* que encontramos en las decisiones de California es en la página 527 del tomo 89, en el cual el sumario expresa que:

''La demandante a la fecha de la publicación alegada era una alumna de la escuela normal del Estado en San José de la cual el

demandado es principal. El alegado libelo consistía en una parte de una carta que fué escrita por el demandado y que hizo que se publicase en un periódico en la que se decía en relación con la demandante como tal alumna que 'por su comportamiento en la clase, conducta en el edificio y sus alredededores y por su espíritu según lo demostró en infinidad de entrevistas personales, había probado ser trapacera e indigna de confianza y carecer casi enteramente de aquellas cualidades propias de mujer y honrosas que deben ser las primeras condiciones de una maestra.' La carta fué escrita en contestación a ciertos artículos de censura que habían aparecido en la prensa pública y que afectaban a la facultad y dirección de la escuela normal en relación con la forma de tratar a la demandante.''

En ese caso el apelante insistió en que la demanda podía ser excepcionada porque ''no alegaba en términos expresos que la publicación no era privilegiada.'' Sobre este punto la corte dijo lo siguiente (bastardilla nuestra):

''Cuando el lenguaje es denunciable *y no consta que es privilegiado,* se presume que es tanto falso como malicioso y no es necesario ninguna otra prueba de falsedad o malicia que no sea la misma publicación (Townshend, 388). Y la malicia que se presume en una publicación falsa únicamente puede eludirse de un solo modo y ese es demostrando una excusa legal para el acto de la publicación; por ejemplo, probando que era privilegiada.''

Aquí también la única cuestión de privilegio que pudo haberse sugerido era la de un privilegio restringido. Verdaderamente el razonamiento del apelante en el presente caso parece dar por sentado, sin la más remota indicación de ninguna razón para tal hipótesis, que el privilegio alegado para el escrito de que aquí se trata no es sino un privilegio restringido. Pero aunque fuera de esta suposición implícita por parte del apelante ninguno de los alegatos pretende establecer tal distinción y aunque sólo hemos tenido poco tiempo para hacer una investigación independiente de la cuestión, la propiedad de la teoría por virtud de la cual parece haber procedido el apelante, a lo menos no es evidente por sí mismo.

Después de clasificar las ocasiones privilegiadas, el señor

Newell al hablar de aquéllas que son absolutamente privile-
giadas, dice en la página 508, sección 506, de su obra sobre
calumnia y libelos, (*"Slander and Libel"*), lo siguiente:

"En esta clase de casos se considera en beneficio del bien público
que a todas las personas debe permitírseles expresar sus sentimientos
y hablar lo que piensan cabal y valientemente sobre todas las cues-
tiones y materias; y todas las acciones por palabras de tal modo
empleadas quedan absolutamente prohibidas aún cuando se alegase y
probase que las palabras fueron empleadas falsamente, a sabiendas, y
con malicia expresa."

Y en la página 510, sección 510, encontramos lo siguiente:

"Las peticiones y memoriales presentadas a la Legislatura relativos
a procedimientos a que son pertinentes, son absolutamente privilegia-
dos. Así lo es una petición a un comité de cualquiera de las cá-
maras."

En el caso de *Lake* v. *King,* citado en apoyo de esta pro-
posición, se dice lo que sigue:

"El demandante declaró que por los seis últimos años era doctor
en derecho y vicario general del obispado de Lincoln para toda la
diócesis, en cuyo cargo se había conducido honesta e incorrupta-
mente sin ninguna extorsión, corrupción u opresión: sin embargo,
el demandado el día primero de diciembre en el décimoctavo año del
reino del ahora Rey hizo que se imprimiese y repartiese, publicase y
entregase a diversos súbditos de nuestro señor el ahora Rey, cierto
falso, malicioso y escandaloso libelo del demandante en el cumpli-
miento de su cargo en esta forma: 'Al honorable Comité del Parla-
mento de Agravios, la humilde petición de Eduardo King de Cray's
Inn en el Condado de Middlesex, Esquire, expone, etc. (y en realidad
la petición imputaba al demandante muchos abusos horribles y gran-
des tales como extorsión, opresión, vejamen y otras faltas menores
en el desempeño de su cargo) cuando en verdad (como alegó el deman-
dante) toda la materia contenida en dicho libelo era falsa y maliciosa
con perjuicio del demandante, etc.

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

"Y este caso fué frecuentemente debatido. Y se convino en que
la presentación de la petición a un Comité del Parlamento era legal,
y que ninguna acción procede por ello aunque la materia contenida

en la petición era falsa y escandalosa, porque es en un curso sumario de la justicia y ante aquéllos que tienen facultad para investigar si es cierta o falsa." English Reports, Reprint, tomo 85, página 137.

No tenemos a la mano el caso de *Cook* v. *Hill,* citado al mismo respecto, pero en otro de New York, el de *Woods* v. *Wiman,* 122 N. Y. 445, Libro XXV, Ct. of App. Reports, edición revisada, página 354, la corte, por conducto del Juez Presidente Sr. Follett, dijo lo siguiente:

"Si los estatutos públicos del Estado han de ser cambiados es cuestión de interés general y público, y la información suministrada al Gobernador con el fin de influir en su actuación respecto a un proyecto que ha aprobado la Legislatura es *prima facie* privilegiada; pero si la comunicación contiene materia difamatoria e innecesariamente se le da publicidad, tal publicación no es privilegiada. *Coffin* v. *Coffin,* 4 Mass. 1; 3 Am. Dec. 189; *Rex* v. *Creevey,* 1 M. & S. 273; Odgers L. & S. (2d ed.) 186; Folkard Starkie L. & S. 202, 205; Newell Def. 471; Townsh. L. & S. (4th ed.) 217."

No debe entenderse ahora que nosotros adoptamos sin restricción la regla arriba sugerida respecto a comunicaciones que se dice son absolutamente privilegiadas. Se llama la atención a la distinción que generalmente se establece en este sentido meramente para insistir en la necesidad de una alegación clara y no contradicha acerca de la malicia expresa y falta de causa probable, así como de prueba completa y convincente en este particular. Ciertamente que la bien conocida regla referente a esto, aún cuando no fuera estrictamente aplicada en casos que envuelven un privilegio restringido solamente, nunca debiera ceder una vez que se le ha hecho incluir procedimientos judiciales y legislativos.

Conocemos, por supuesto, las limitaciones establecidas en la regla inglesa en el caso de *White* v. *Nicholls,* 44 U. S. 266, a la que hemos hecho mención en el caso de *Franco* v. *Martínez,* resuelto en marzo 28, 1921, (pág. 237), e implícitamente confirmada de nuevo en el de *Nalle* v. *Oyster,* 230 U. S. 165. Si bien la doctrina allí enunciada no parece haber sido acep-

tada universalmente (véanse los casos de *Shelfer* v. *Gooding,* 2 Jones (N. C.) 181; *Johnson* v. *Brown,* 13 W. V. 119, 17 R. C. L., páginas 330 y siguientes), no es necesario discutirla ahora suponiendo que estemos en libertad para hacerlo.

Las conclusiones a que se llegó en el caso de *Nicholls* han sido resumidas brevemente en la opinión en la siguiente forma:

"La investigación nos ha llevado a las siguientes conclusiones que presentamos respecto a la ley aplicable al mismo.—1. Que toda publicación ya sea por escrito, impresa, o por grabados, en que se alegue o impute a cualquier persona algo que lo sujete a castigo, o cuyo fin es infamarle, odiarle o ridiculizarle, es *prima facie* un libelo, y envuelve malicia por parte del autor y quien la publica hacia la persona de quien se hace tal publicación. La prueba de malicia, por tanto, en los casos que acaban de referirse, nunca puede exigirse de la parte que se queja fuera de la prueba de la publicación misma; la justificación, excusa, o mitigación, si alguna puede probarse, debe proceder del demandado.—2. Que la descripción de casos reconocidos como comunicaciones privilegiadas debe ser entendida como excepciones a esta regla, y que se fundan en alguna obligación o motivo, legal, moral o social, al parecer reconocido, que razonablemente pueda presumirse que indujo a la publicación, y por tanto que *prima facie* la releva de esa justa inferencia de la cual se deduce la regla general de la ley. La regla de evidencia en cuanto a tales casos ha sido de conformidad cambiada hasta el punto de exigir al demandante que haga desaparecer aquellas presunciones que surgen de la apariencia de las obligaciones y situaciones de las partes, y exigirle que haga saber al demandado la existencia de malicia como verdadero motivo de su conducta. Fuera de esta medida no podrá permitirse que pueda tener efecto ninguna presunción y mucho menos puede santificar la indulgencia de malicia, por mal intencionada, por expresa, bajo la protección de formas legales. Llegamos a la conclusión, por tanto, de que debe probarse la malicia aunque se alegue que ha existido en los procedimientos ante una corte, o cuerpo legislativo, o cualquier otro tribunal o autoridad, aunque tal corte, cuerpo legislativo u otro tribunal, haya podido ser la debida autoridad para reparar el perjuicio a ella alegado; y que la prueba de malicia expresa en cualquier publicación por escrito, petición o procedimiento, dirigido a tal tribunal, convertirá esa publicación, petición o procedimiento, en libelo

por su naturaleza, puede ser denunciable, y sujetará al autor y al que lo publica, a todas las consecuencias de un libelo. Y creemos que en cada caso de un procedimiento como los enumerados la falsedad y falta de causa probable equivaldrá a la prueba de malicia.''

La obligación recaía en el apelante de demostrar que esta demanda exponía hechos suficientes para determinar una causa de acción acerca de una comunicación que *prima facie* es privilegiada, y no solamente ha dejado él de hacerlo, sino que creemos que el examen cuidadoso de la alegación, sin la ayuda de argumento o alguna referencia más específica, muestra una clara incompatibilidad entre la alegación de malicia y falta de causa probable y los demás hechos alegados, o que de otro modo aparecen de la faz del documento en cuestión. Para los fines de esta opinión puede admitirse que a falta de tal contradicción el caso de *Nalle* v. *Oyster, supra,* sería suficiente autoridad para una revocación. Pero en el presente caso no podemos decir con referencia al cargo de malicia, falsedad y falta de causa probable, como dijo la Corte Suprema de los Estados Unidos en el caso de *Oyster* que ''la alegación de estos hechos no se niega o restringe por ninguna otra cosa que aparezca'' en la demanda.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.