## GEORGE G. GREELY v. JAMES B. TOWNSEND AND JOHN B. POWELSON.

WRIT OF ERROR TO THE SUPREME COURT OF THE UNITED STATES. — When a final judgment in a suit has been rendered in the highest Court of law or equity of a State in which a decision in the suit could be had, and a writ of error has been issued by the Clerk of the Circuit Court of the United States, directed to the Judges of the Court in which the judgment was rendered, commanding that the record be sent before the Supreme Court of the United States to be there reviewed, the presiding Judge of the Court in which the judgment was rendered is not compelled, as a matter of right, to award a citation to the respondent to appear before the Supreme Court of the United States to maintain the validity of his judgment, but he may look into the record for the purpose of determining whether in his opinion the judgment is one from which a writ of error lies, and if he determines that it is not, he may refuse the citation.

SAME.—The granting of a citation is not a mere ministerial act, but one of judicial discretion.

POWER OF STATE LEGISLATURE. — It is not within the constitutional power of a State Legislature to confer jurisdiction upon Federal Courts, or prescribe the means or mode of its exercise.

WRIT OF ERROR FROM JUDGMENT CONCERNING PUEBLO LANDS.—A writ of error does not lie to the Supreme Court of the United States from a judgment rendered by the Supreme Court of this State, by which it is decided that the City of San Francisco was, at the date of the conquest and cession of California, and long prior thereto, a pueblo, and that as such pueblo she had a title to the lands within her general limits, and that such lands were held by the city in trust for public uses, and were not, either under the old Government or the new, the subject of seizure and sale under execution issued on a judgment against the city.

WHEN WRIT OF ERROR LIES.—The true test as to whether a writ of error lies to the Supreme Court of the United States from the final judgment of a State Court

is to be arrived at, not from mere averment in the pleadings, but from the matter decided, as developed in the whole record.

STAY OF REMITTITUR.—The presiding Judge of the highest Court in a State has no power to grant a stay of proceedings on a judgment rendered in that Court until an application can be made to some Justice of the Supreme Court of the United States to issue a citation on a writ of error.

MOTION for a citation to the respondent, on a writ from the United States Circuit Court for California to this Court.

The case of *Greely* v. *Townsend and Powelson* has not been reported, as it did not involve any point of law not already passed on. It was an action of ejectment brought to recover possession of the western half of Fifty-vara Lot Number One Thousand One Hundred and Eighty-eight, in the City and County of San Francisco. The defendants, on the trial, offered to deraign a title from an execution sale on a judgment against the city, and offered to show by a decree of confirmation by the United States Land Commission of the city's title, that the title was in the city.

The evidence was excluded by the Court.

Plaintiff recovered judgment in the District Court, Twelfth Judicial District, City and County of San Francisco, and defendants appealed to the Supreme Court. After the affirmance of the judgment by the Supreme Court, appellants obtained a writ of error from the Clerk of the Circuit Court of the United States, directed to the Judges of the Supreme Court of the State of California, and then applied to the Chief Justice of said Court to award a citation to the respondent to appear before the Supreme Court of the United States and maintain the validity of his judgment. This application was made on the 14th day of June, 1864. The Chief Justice fixed the time for hearing the application for the 11th day of July, 1864, and in the meantime stayed all proceedings in the cause.

*Vanarman & Townsend*, for the motion.

A writ of error from the United States Supreme Court to the Supreme Court of a State is a *writ of right*, and issues *ex*

*debito justitiæ,* and not as a matter of *discretion,* and does not depend upon the *amount* involved in the controversy, nor is any allowance thereof required beyond what takes place by the issue of the writ from the United States Supreme or Circuit Court, and the right to maintain it ought not to be passed upon by a Judge at Chambers. (Conklin's Treat. 3d Ed. pp. 681, 683; *Buel* v. *Van Ness,* 8 Wheat. 321, 323.)

Such writ is a *supersedeas,* and stays execution in cases under the twenty-fifth section of the Judiciary Act as well as when prosecuted from Circuit Courts, when the writ is *served by lodging a copy thereof for the adverse party in the Clerk's office* where the record remains within ten days, Sundays exclusive, after rendering the judgment or passing the decree complained of. (1 U. S. Stats. at Large, p. 85, §§23, 25; Conklin's Treat. 3d Ed. pp. 679, 680, 683, 684; *Stocton* v. *Bishop,* 2 How. U. S. 74.)

Unless the writ of error had been regarded and treated generally in the other States of the Union as a writ of right, and the question of jurisdiction under the twenty-fifth section of the Judiciary Act as properly belonging to the United States Supreme Court to determine, it can hardly be imagined how such cases as the following could ever have been taken to that Court under said twenty-fifth section: *Houston* v. *Moore,* 3 Wheat. 433; *Evans* v. *Phillips,* 4 Wheat. 73; *Gibbons* v. *Ogden,* 6 Wheat. 448; *Verden* v. *Coleman,* 18 How. 86; *Withers* v. *Buckley,* 20 How. 84; *White* v. *Wright,* 22 How. 19.

Even if, upon the present application, and notwithstanding the issuance and service of the writ of error, the Chief Justice of this Court were required to look into the record and be satisfied that the plaintiffs in error will, or at least, *may,* be able in the United States Supreme Court to maintain their writ, still, it is clear that the writ is in this case properly issued and the record is *examinable* in the United States Supreme Court. (*Smith* v. *State of Maryland,* 6 Cranch, 304, 305; *Fairfax's Devisee* v. *Hunter's Lessee,* 7 Cranch, 621, 622, 626; *Martin* v. *Hunter's Lessee,* 1 Wheat. 355, 361; *Miller* v. *Nicholls,* 4 Wheat. 311; *Ross* v. *Doe ex dem. Borland.*

1 Pet.. 663 ; *Satterlee* v. *Mathewson,* 2 Pet. 409 ; *Craig* v. *State of Missouri,* 4 Pet. 425, 429.)

*W. W. Crane, Jr.,* against granting the motion.

Upon question of signing citation cited Conklin's Treatise, page 683 ; *Ferris* v. *Coover,* 11 Cal. 179 ; *Hart* v. *Burnett,* 20 Cal. 169.

As to whether this is a case within the twenty-fifth section of the Judiciary Act of seventeen hundred and eighty-nine, also cited Statutes at Large, Vol. I, p. 85 ; *Owings* v. *Norwood's Lessee,* 5 Cranch, 344 ; *Williams* v. *Norris,* 12 Wheat. 117 ; *Mathews* v. *Zane,* 4 Cranch, 382 ; *Mathews* v. *Zane,* 7 Wheat. 164.

SANDERSON, C. J.

At the last term of this Court a judgment was rendered in this case affirming the judgment of the Court below. The defendant, against whom the judgment was rendered, now presents a writ of error, addressed to the Justices of this Court, issued by the Clerk of the.Circuit Court of the United States for the Northern District of California, and applies to me as Chief Justice of the Court for a citation to the defendant in error. The application is made under the provisions of the twenty-fifth section of an Act of Congress, passed on the 24th of September, 1789, entitled "An Act to establish the Judicial Courts of the United States." (1 U. S. Statutes at Large, 85.) That section declares:

"A final judgment or decree in any suit in the highest Court of law or equity of a State in which a decision in the suit could be had, where is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States, and the decision is against their validity ; or where is drawn in question the validity of a statute of, or an authority exercised under any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States,

and the decision is in favor of such validity ; or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party under such clause of the said Constitution, treaty, statute or commission, may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error, the citation being signed by the Chief Justice, or Judge or Chancellor of the Court rendering or passing the judgment or decree complained of, or by a Justice of the Supreme Court of the United States." * * *

In support of the application it is first argued that the writ provided for in the foregoing section is a writ of right, and issues *ex debito justitiæ* and not as a matter of discretion ; and that I cannot look into the record or proceedings for the purpose of determining whether the case falls within either class described in the section above quoted ; and that no alternative is allowed, and I have no choice, but must issue the citation upon the presentation of the writ and a sufficient bond, notwithstanding I may be fully satisfied in my own judgment that the case in which the application is made does not come within the purview of the section in question.

To this doctrine I am unable to assent. It finds no color in the Federal Judiciary Act, and the industrious research of counsel has been unable to cite a single case in which the doctrine for which he contends is announced. Conklin's Treatise (pages 81 and 83,) the case of *Buel* v. *Van Ness*, 8 Wheaton, 321, and an Act of the Legislature of this State entitled "An Act to provide for certifying and removing certain cases from the Courts of this State to the United States Circuit Courts, and to remove, by writ of error, certain cases from the Supreme Court of this State to the Supreme Court of the United States," passed April 9, 1855, (Statutes of 1855, p. 80,) only are cited by counsel in support of his proposition. Conklin's Treatise and the case of *Buel* v. *Van Ness* wholly fail, in my judgment, to sustain the doctrine. On the contrary, so far as they afford

any guide to a correct solution of the question, they seem to militate against it.

Mr. Conklin, in his Treatise, (page 683,) says : " When the writ of error is to a State Court, the citation may be signed by the presiding Judge of the Court to which it is directed, or by any Justice of the Supreme Court of the United States. It is usual, in imitation of the English practice, also to have the writ of error *allowed* by the Judge.   But the Act does not in terms require it, nor is there any rule in the Supreme Court requiring it, and no formal allowance beyond what is ·implied by the approval of the security offered, and the sign-ing of the citation is necessary in any case unless it is made so by rule or established usage in the particular Circuit Court to which it is returnable."   This language, although not very satisfactory, certainly favors the idea that there must be an *allowance* of the writ by the Judge either expressly or by impli-cation.    To allow implies an exercise of judgment and will on the part of him by whom the act is done, coupled with the power, in his discretion, to refuse.    In *Buel* v. *Van Ness* it was objected that the writ of error in that case did not, upon its face, purport to be issued upon a final judgment of the highest Court in the State.    In reply to this objection Mr. Justice Johnson, who delivered the opinion of the Court, said: " We see no reason why it should be so expressed.   The writ of error is the act of the Court; its object is to cite the parties to this Court, and to bring up the record.   How else is this Court to ascertain whether the judgment be final ?   Nor can there be any danger of its being hastily or erroneously used, since *it must be allowed* either by the presiding Judge of the State Court or a Judge of the Supreme Court of the United States."    Further on, he said : " It is a writ of common right in the cases to which the jurisdiction of an appellate Court extends, and the abuse of it is sufficiently guarded against, as suggested to the first exception," referring to what he had previously said, which was that which I have above quoted. What is the guard against the hasty and erroneous use of the writ to which he refers in the first instance, or its abuse in the

second, unless it be the judgment and discretion of the Judge by whom the writ is allowed and the citation issued? The reason assigned by him why it was not material that the judgment need not appear upon the face of the writ to have been a final judgment is, in effect, because the Judge by whom the writ was allowed and the citation signed had the power to determine in advance, and preliminary to his signing the citation, whether the judgment was final, and if not to refuse to sign it. Whether the judgment is final or not is one of the tests of the jurisdiction of the appellate Court, and if I may, as the case of *Buel* v. *Van Ness* clearly implies, ascertain the presence or absence of that test, with a view of determining whether I will sign or refuse to sign the citation, then, by parity of reason, I may look into the case for the purpose of ascertaining whether it embraces the other conditions upon which the jurisdiction of the appellate Court is grounded, and may be governed in my final action by the conclusion to which my judgment may come.

This is not the first time that the question under consideration has arisen in this State. The same point was made in *Ferris* v. *Coover*, 11 Cal. 179, and in *Hart* v. *Burnett*, 20 Cal. 169. In the former case Mr. Justice Baldwin said: " The appellate power of the Supreme Court of the United States is strictly limited to the cases given in the Act. Like any other special power, it is to be strictly pursued, and the record must show upon its face the facts which give the power. In the cases falling within the provisions of the section quoted, we acknowledge the right of appeal. We deny it in all other cases. By the provisions of this section, in such cases the Chief Justice of this Court is authorized to issue the citation. That duty or that power is cast upon him alone. The Associate Justices have nothing to do in the premises. The act is his as a chamber proceeding. But still the power is in its nature in some degree judicial. He must see, when he is required to act or authorized to proceed under the Federal law, that he is within the law. If there is much doubt or question as to the jurisdiction, he might, in his discretion (and

perhaps it would be advisable), issue the citation, leaving the fact of jurisdiction to be determined by the Supreme Court of the United States." This language of Mr. Justice Baldwin, and more of like import, was approvingly quoted by Mr. Chief Justice Field in *Hart* v. *Burnett*, and that learned Judge who now occupies a seat upon the bench of the Supreme Court of the United States, continued in these words: " In accordance with the views here expressed, I must, when applied to for a citation, judge, in the first instance, whether the case is covered by the Act of Congress." He came to the conclusion that it was not, and denied the application for a citation.

To me it seems clear that Congress foresaw that the provisions of the twenty-fifth section might lead to great abuse unless some check was interposed to the hasty and unauthorized use of the remedy thereby granted in certain cases; and to that end the allowance of the writ, or what is equivalent thereto, the issuing of the citation, was designedly placed in the sound discretion of the presiding Judges of the State Courts and the several Justices of the Supreme Court of the United States. Why place the power in the hands of judicial officers if its exercise is not a judicial act? If the signing of the citation is purely a ministerial act, unaccompanied by the exercise of judicial discretion, the power might, with equal convenience, and with much greater congruity, have been lodged with the Clerk of the State Court, or with the Clerk of the United States Circuit Court, by whom the writ is issued. If it be said that there is danger of defeating the object of the law in placing the power in the discretion of the State Judges, by reason of any supposed jealousy on their part toward the encroachments of Federal jurisdiction, the answer is that against this danger, also, Congress has wisely guarded by providing that a party shall not be ousted of his appeal by the adverse decision of a State Judge, by allowing the application to be made to a Federal Judge without any restriction upon the number of applications. So, as the Courts are at present organized, there are eleven Judges, to either

and all of whom the application can be made.  Thus, it may be safely affirmed that the abuse of the writ is designedly and amply guarded against upon the one hand, and its rightful use fully secured upon the other.

As a general rule, upon a question of construction, effects and consequences ought not to be consulted.  But to this general rule, cases of doubt, where the opposing reasons are nicely balanced and the scales refuse to turn, the light weights of effect and consequence may be superadded.  Admitting then, for the sake of argument, that the present is such a case, it is proper to refer to the effects and consequences of the doctrine contended for on behalf of this application; and upon this point I cannot do better than by quoting from the opinion of Mr. Justice Baldwin in *Ferris* v. *Coover.*  Such a "doctrine would be fraught with enormous and intolerable evils.  If an appeal with stay of execution be matter of absolute right, then every case, civil or criminal, decided by the highest Court having jurisdiction in the State, could be taken up to the Federal Capital, and all proceedings suspended until its return.  In every criminal case the pretext would be that the law was *ex post facto.*  It would be no answer to say that the record showed plainly the contrary; the reply to this would be, 'The Supreme Court is to decide that question.'  And every civil case might be carried thither upon the ground of a supposed or asserted repugnance to some provision of the Federal Constitution or law, or of some treaty.  That damages might be given for frivolous appeals would be no adequate protection against them, and in criminal cases no protection at all.  The Supreme Court of the United States holds but one term in each year, and from the embarrassments and delays attending the taking of cases from this Court to that, especially in criminal cases, the recognition of this principle would produce the worst possible results.  If the Chief Justice of this Court should err in deciding the case not to be appealable, the jurisdiction of the Supreme Court of the United States would not thereby be ousted.  That Court could, on the

inspection of the record, grant the writ or issue the citation, and proceed to hear and determine the case."

As a last resort, counsel appeals to the statute of this State in aid of the doctrine for which he contends. The origin and history of the Act of the 9th of April, 1855, (Statutes of 1855, p. 80,) are well known. Five months prior to its passage the then Supreme Court of this State, in the case of *Johnson* v. *Gordon*, 4 Cal. 368, had decided that the twenty-fifth section of the Federal Judiciary Act of 1789 was unconstitutional, and declared that no case could be taken from a State to a Federal Court by writ of error or otherwise. The decision was made upon the authority of the Court of Appeals of Virginia in the case of *Martin* v. *Hunter's Lessee* and in harmony with the ultra State rights doctrine of Calhoun and his political followers, the soundness of which is now undergoing its last test upon the bloody battlefields of the republic. Startled by the judicial enunciation of a doctrine which they had previously contemplated only in its politcal and partisan aspect, and which, in their eyes, may have acquired additional importance by reason of the immediate sanction of the highest Court of the State, the Legislature sought to provide a remedy against its supposed evils by interposing a barrier to its further judicial progress, apparently without pausing to consider whether a remedy was within the constitutional reach of State legislation. The motive was a good one; but, as all must admit the power was wanting. It is not within the constitutional power of a State Legislature to confer jurisdiction upon Federal Courts or prescribe the means or mode of its exercise. That subject belongs exclusively to the Federal Government, and must be regulated solely by the Federal Constitution and the laws of Congress. While, therefore, I appreciate the motive of the Legislature in passing the Act in question, I am compelled to deny its power, and must hold that, so far as the Act attempts to prescribe a rule for judicial conduct in cases like the present, it is wholly inoperative. If constitutional, the occasion for such legislation no longer exists; for the case of *Johnson* v. *Gordon* has been long since

overthrown and a contrary doctrine firmly established in this State. (*Ferris* v. *Coover*, 11 Cal. 175; *Hart* v. *Burnett*, 20 Cal. 169.)

It only remains for me to determine whether the facts of this case are covered by the twenty-fifth section of the Act of Congress. The action was brought to recover possession of a certain lot in the City of San Francisco, and the ultimate facts relied on to bring the case within the Act are stated in the defendant's answer as follows : " And for a further and separate answer to said complaint, said defendant, according to his information and belief, says that by virtue and effect of the treaty of peace, friendship, limits and settlement, between the United States and the Mexican Republic, dated at Guadalupe Hidalgo, February 2d, 1848, the ownership and title in fee simple to said lot of ground described in said complaint, passed to and became vested in the said United States, and that the said United States, afterward, by force and effect of the Act of the Congress thereof passed March 3d, 1851, entitled ' an Act to ascertain and settle the private land claims in the State of California,' and by force and effect of the final decision and decree of the Board of Commissioners of said United States, appointed and acting thereunder (upon the petition and claim of the City of San Francisco presented to and filed before said Board), in favor of said city, the said ownership and title in fee so acquired and held by the United States passed to and vested in the said City of San Francisco, and that by divers mesne conveyances, since duly executed and delivered, and by force and effect of divers ordinances of said City of San Francisco, and an Act or Acts of the Legislature of California, duly passed, the said ownership and title in fee in and to said lot of ground and premises had, prior to the 28th day of March, 1862, became and then was vested in and held by one James E. Mumford," defendant's lessor, etc. In support of this defense the defendant upon the trial offered evidence of a judgment against the City of San Francisco, execution thereon, and a Sheriff's sale and deed of the lot in suit. This evidence was objected to by the other side, and excluded by the Court upon

Greely v. Townsend et al.

the authority of *Hart* v. *Burnett*, 15 Cal. 530, where it was held that the City of San Francisco was at the date of the conquest and cession of California, and long prior thereto, a pueblo, and that as such pueblo she had a certain right or title to the lands within her general limits, and that such lands were held by the city in trust for public uses, and were not, either under the old Government or the new, the subject of seizure and sale under execution. To this ruling the defendant duly excepted, and on appeal to this Court the judgment of the Court below was affirmed. In rendering this judgment was the validity of the treaty of Guadalupe Hidalgo, or of the Act of Congress of the 3d of March, 1851, or the authority of the Board of Land Commissioners drawn in question ; and if so, is the judgment against the validity of either? Or, was the construction of any clause of the Federal Constitution, or of the treaty of Guadalupe Hidalgo, or of the Act of Congress of the 3d of March, 1851, or of the Land Commission, drawn in question; and if so, is the judgment against any title, right, privilege or exemption specially set up or claimed by the defendant in good faith? I say in good faith, because such, in my judgment, is the true intent and meaning of the Act.

The first question presented is whether the validity or construction of the treaty, or of the Act of Congress, or the Land Commission, any or all, was directly or necessarily involved in our decision to the effect that the lot in question was not subject to execution sale. The question is narrowed to these three, because (which is worthy of note) it is not pretended that we have violated any clause of the Federal Constitution.

It is first claimed that these several matters were directly and necessarily involved, because they are expressly alleged in the answer, and therefore the title of the defendant thereunder is " set up and claimed" within the meaning of the Act. Counsel admits that the construction of the Federal Constitution is not involved. Suppose, then, that the pleader, instead of commencing with the treaty of Guadalupe Hidalgo, had gone back to seventeen hundred and eighty-nine, and led

off by averring " that, by reason of the force and effect of the
Federal Constitution," etc., would the construction of that
instrument thereby have become involved in the decision of
the case ?   I hardly think the learned counsel will answer in
the affirmative.   Matter of averment cannot be regarded,
merely because it is averred, as furnishing a certain test.
Whether the facts relied on as conferring appellate jurisdic-
tion appear as matter of averment in the pleadings, or are
developed by the evidence during the progress of the trial,
is wholly immaterial, and the mere fact that they are stated
in the pleadings can have no possible effect upon the result.
The test is to be found in the facts themselves, and not in
the mode or manner of their presentation.   The test ques-
tion in the present case is this : " Is the defendant's title, or
rather the title of the City of San Francisco, derived by or
through the treaty, or the Act of Congress, or the Land Com-
mission, or is it in any manner dependent upon either for its
validity ?"

The argument is that the lot in question originally belonged
in fee to the Mexican nation, and was ceded in fee to the
United States by the treaty of Guadalupe Hidalgo, and was
granted by the latter to the City of San Francisco, by the Act
of March 3d, 1851, and confirmed to her by the judgment and
decree of the Land Commission ; and hence became subject to
sale on execution against the city.   This Court, on the con-
trary, has decided, upon the authority of *Hart* v. *Burnett*,
that the City of San Francisco was a pueblo, or town, under
the Mexican Government, long prior· to the treaty ; and that
as such pueblo she held, under the laws of Mexico, the land
in question in trust for public uses, also long prior to the
treaty, and that under the laws of Mexico such land so held
was not subject to forced sale under execution ; and that by
reason of the character of the city's title the same is true under
the laws of this State.   Thus the real point of difference
between the argument and decision of this Court (and the
point upon which the whole case turned) antedates the treaty.
The error of the argument lies in the fact that it assumes

(what this Court has decided is not true) that the title to the land was in the Mexican Government at the date of the treaty, and by its force and effect passed to the United States. Having decided that the title to the land was in the Pueblo of San Francisco prior to the date of the treaty, and that it was held in trust, the final judgment which was rendered by this Court followed as a matter of course. The determination of the date and character of the city's title imparted to every subsequent question involved in the decision of the case a like legal complexion, and became conclusive upon the ultimate question of final judgment. It is clear, therefore, that the determination of the leading and controlling question did not involve the validity or construction of the treaty or the Act of Congress, or the authority of the Land Commission, because its solution necessarily depended entirely upon the laws of Mexico as they existed prior to the date of the treaty.

The only further question presented by the case was whether a trust estate was subject to forced sale under execution against the trustee, which, I presume, counsel will admit could hardly depend upon the treaty or Act of Congress, or the decree of the Land Commission. Thus only two legal propositions were involved in the decision of the case, neither of which was founded upon the treaty or Act of Congress, or the decree of the Land Commission, or bore any legal relation whatever to either ; but on the contrary the first had its origin in and depended for its solution wholly upon the Mexican law and the latter upon the laws of this State. If the questions upon which this Court necessarily passed in arriving at a final judgment adverse to the alleged title of the defendant bear directly or indirectly any legal relation whatever to the treaty of Guadalupe Hidalgo, or the Act of Congress of the 3d of March, 1851, or the decrees of the United States Land Commission, I certainly am unable to perceive it. That this Court indirectly decided that San Francisco did not obtain her title from the United States is true, and the same result would have followed had the pleader averred that she obtained her title from the King of the Sandwich Islands, or interposed, under pretense

78

Greely *v.* Townsend *et al.*

that it was a defense to the action, any other matter wholly foreign to the merits of the controversy. As I have already stated, mere averment cannot make that material which is immaterial, or raise a mere pretext to the level of a controlling fact. A question so made and presented does not draw into the decision of the case the validity or construction of a treaty, or Act of Congress, or of a Commission, within the meaning of the Federal Judiciary Act. To hold that it does would enable the pleader to determine the question of Federal jurisdiction, and there has not been and never will be an action of ejectment tried in this State where such a result could not be readily attained. It would only be necessary to allege Mexican title, and the validity and construction of treaties, Acts of Congress and Commissions are all brought in. In vain the Court may say they have nothing to do with the case. The reply is, " My title, my right, privilege or exemption" (as the case may be,) " depends upon them, and if you decide against me the Federal Judiciary Act takes the case to Washington." The logic is false, and does not rise to the dignity of forensic discussion. It perverts law and ignores good faith, which every rule of civil conduct exacts. It converts form into substance, and accords to pretense the dignity of truth.

In conclusion, I have only to add that in my judgment, after a careful examination of the record, this case does not fall within the Judiciary Act of 1789 ; and that the facts relied on for that purpose do not immediately or remotely affect any question directly involved in the final judgment. I may be in error, but if I am the defendant is not without remedy. He can make a like application to each and all of the Justices of the Supreme Court of the United States.

While the power and the responsibility of passing upon this question is vested, so far as the action of this Court is concerned, solely in me, by the Act of Congress, I have not failed to take counsel with my associates, and I am authorized to say that they fully concur in the conclusion which I have reached.

I am also asked to grant a stay of proceedings for the purpose of an application to some Justice of the Supreme Court

of the United States. This individually I have no power to do. No such power is conferred upon me by the Act of Congress. The Act of the Legislature of this State confers the power in terms, but I have already decided that Act to be inoperative.

The application must be denied, and it is so ordered.