UNION CENTRAL LIFE INSURANCE COMPANY, APPELLANT, *v.* GROMER, TREASURER OF PORTO RICO, RESPONDENT.

APPEAL from the District Court of San Juan, Section 2.

No. 824.—Decided June 27, 1913.

TAXATION — LOANS — FOREIGN CORPORATIONS — MORTGAGE CREDITS — SITUS OF CREDITS.—Loans made by a foreign corporation domiciled in the United States through its agent in Porto Rico who is charged with examining the applications for loans and forwarding them to the head office of the corporation in the United States for approval, said loans to be secured by mortgages on lands in Porto Rico, are regarded for the purposes of taxation as credits whose situs is at the domicile of the creditor, and in order that taxes may be levied thereon at the domicile of the debtor the statutes of the state of said debtor must so provide expressly.

ID.—MORTGAGE CREDITS—PERSONAL PROPERTY.—In accordance with the law in force in Porto Rico, the owner of a mortgaged property pays taxes on the total value of said property without deducting the amount of the mortgage, which for the purposes of taxation is the same as personal property.

ID.—PERSONAL CREDITS.—Under section 290 of the Political Code as amended, personal credits are expressly exempt from taxation.

ID.—CONSTRUCTION OF LAW—CONSTITUTIONAL LAW—MORTGAGE CREDITS.—When a statute may be construed in different ways, that interpretation which will harmonize it with the Constitution and preserve its validity should be adopted, and according to this rule sections 320 and 290 of the Political Code would be unconstitutional if construed in the sense that mortgage credits owned by a foreign corporation domiciled outside of Porto Rico are subject to taxation when the same credits are exempt if owned by an individual.

ID.—SITUS OF CREDITS—CONSTITUTIONAL LAW.—Assessing and collecting taxes on mortgage credits belonging to a foreign corporation domiciled outside of Porto Rico, the situs of which credits is considered to be at the creditor's domicile, would be a violation of the Fourteenth Amendment to the Constitution of the United States prohibiting the taking of property without due process of law.

ID. — CONSTRUCTION OF LAW — FOREIGN CORPORATIONS — INVESTMENTS — CAPITAL EMPLOYED IN BUSINESS.—When a foreign life insurance corporation domiciled outside of Porto Rico, having no office and doing no insurance business in this Island, invests capital in loans secured by mortgages on real estate in this Island, said capital cannot be regarded as capital employed in its business in this Island, nor can the corporation be said to be doing business in Porto Rico within the proper and usual signification of these terms.

ID.—CORPORATIONS—TAXATION OF FRANCHISES.—In order to tax the franchises of a corporation said franchise must be expressly assessed and the taxes imposed according to their true value.

ID.—SITUS OF CREDITS—NON-RESIDENT CREDITORS.—For the purposes of taxation the situs of personal credits is considered to be at the domicile of the creditor, therefore, when the creditor resides outside of Porto Rico the Legislature has no authority to impose taxes on said credits.

ID.—PAYMENT UNDER PROTEST.—The plaintiff corporation having paid under protest the taxes assessed by the Treasurer of Porto Rico on the mortgage credits owned in this Island, the amount thereof should be refunded to said corporation.

The facts are stated in the opinion.

*Messrs. López Landrón, Rincón* and *Francis* for appellant.

*Mr. Wolcott H. Pitkin, Jr.,* Attorney General, for respondent.

*Amicus curiae:* Mr. J. Henri Brown.

MR. JUSTICE MACLEARY delivered the opinion of the court.

On June 23, 1911, the plaintiff instituted an action in the District Court of San Juan against the defendant, as Treasurer of Porto Rico, pursuant to Act No. 35, approved March 9, 1911, for the recovery of money paid under protest as taxes levied for the fiscal year 1910–11. On June 30, 1911, defendant filed an answer.

It is alleged in the complaint, and not controverted by the answer or the proof, and found by the trial court that plaintiff was at the time of the institution of this action a foreign joint-stock company organized and existing under the laws of the State of Ohio, with the purpose of insuring the lives of persons within and without the said State, and that plaintiff is doing business as such in Ohio under its corporate name; that plaintiff was duly registered under the laws of Porto Rico in the Office of the Secretary of Porto Rico as a foreign corporation and had paid the occupation tax and

otherwise duly complied with all the requisites of the law necessary to enable it as such to do business in Porto Rico and to appear in the Insular courts; that plaintiff was represented, as required by statute, in Porto Rico, by an authorized resident-agent, José C. Barbosa, of San Juan, Porto Rico; and, further, that defendant was the duly appointed, qualified and acting Treasurer of Porto Rico.

It is alleged in the answer, sustained by the proof, and found, at least inferentially, by the trial court, that the Treasuser of Porto Rico assessed plaintiff, for purposes of taxation, for the fiscal year 1910–11 on a valuation of $211,402, and that there was levied thereon a tax amounting to $3,382.44, which sum together with delinquent charges amounting altogether to $3,621.73 was on May 25, 1911, paid under protest to the Treasurer of Porto Rico.

It is not shown that the plaintiff company has insured lives in Porto Rico, but it does appear that it has lent money, secured by mortgages on real estate, in this Island, such loans totaling during the month of April, 1910, $211,402. A part of this amount—that is to say, $31,000—was lent after January 31, 1901, and previous to March 10, 1904.

The plaintiff has an agent residing in San Juan, Porto Rico, through whom it has conducted business in this Island. The said agent formally communicated with those persons who desired to make loans from the plaintiff and sent to the latter at its office in Cincinnati, Ohio, the necessary papers or documents relative to such transactions, when the plaintiff would either accept or refuse the proposed business. If it accepted the proposition, the notarial documents securing the loans by mortgages were executed in Porto Rico and registered in the proper registry of property. The loans contracted were payable in Cincinnati, Ohio, but some at least of the instalments and interest that have heretofore been collected have been paid through the American Colonial Bank of San Juan, Porto Rico.

On September 21, 1910, the Treasurer of Porto Rico ad-

dressed a communication to the plaintiff company to the effect that the first and second instalments of taxes for the fiscal year of 1910–11 amounting to $3,382.44 were due and should be paid without delay. The taxes in question were not paid, and on March 18, 1911, the Treasurer addressed another communication to the plaintiff's agent in San Juan to the effect that unless the amounts due and owing for taxes were paid they would be collected by attaching and selling a portion of the property whereon the same were due. The claim not having been met, even after this letter, attachment proceedings were taken, with a view to its recovery, on a mortgage made in favor of the plaintiff securing the sum of $7,000 on certain rural lands situated in Arecibo, Porto Rico. Under such circumstances the plaintiff paid the amount claimed under protest and brought the action which has given rise to this appeal, based on the provisions of our statute. Act No. 35 of 1911, Laws of 1911, page 124. These facts may be regarded as undisputed.

There are three other important questions of fact which are in dispute between the parties and which may be stated substantially as follows: 1. Whether or not plaintiff held any personal property in Porto Rico during the fiscal year 1910–11. 2. Whether or not plaintiff during said fiscal year held any real estate in Porto Rico, except to the extent of seven mortgages, aggregating the sum of $31,000 executed between January 31, 1901, and March 10, 1904, on which tax was paid for the fiscal year 1910–11, before the levy was made for the collection of these taxes. 3. Whether or not plaintiff was engaged in business in Porto Rico or had any part of its capital employed in business in this Island during the fiscal year 1910–11. It will be seen during the further discussion that, in so far as this case is concerned, all these questions must be answered in the negative.

On October 26, 1911, the case was tried in Section 2 of the District Court of San Juan before Judge Charles E. Foote, who, on October 31, 1911, filed written findings and rendered

a judgment in favor of defendant dismissing the complaint with costs, to be assessed against the plaintiff. On November 9, 1911, an appeal was taken from said judgment to this court, and on March 2, 1912, the record was duly settled and certified. The case was heard here on November 15, 1912, and submitted on oral arguments and printed briefs of both parties.

The facts of the case material to this discussion, as suggested by the Attorney General on behalf of the respondent, may be summarized as follows: An Ohio corporation or joint-stock company designated an agent in Porto Rico and complied with the foreign-corporation laws by the payment of annual license taxes, the making of reports, etc., permitting it to do business in Porto Rico. It lent money to Porto Rican land owners, the agent attending to the ordinary steps necessary to bring borrowers and lender together and to close the deals, taking mortgages on the lands as its security. The notes and mortgages it kept and still keeps at its home office in Ohio. For a year or more prior to the levy of this tax no new loans had been taken, but its license had been renewed and loans and interest had been collected through a Porto Rican bank, and during the fiscal year in question the company possessed loans arising out of the business thus conducted amounting to $211,402, secured on Porto Rico lands, the mortgages being duly registered here.

In the discussion of the matters involved in this case we will not follow closely the path taken by either the appellant or the respondent in their briefs and oral arguments, but will endeavor to cover all the points made by either of them. In the first place, it is well for us to examine the nature of the property on which this tax is levied and its location in connection with the legislative power to impose taxes on such property.

The tax imposed in this case purports to be on the capital of the appellant employed in business in Porto Rico. What the company has done essentially is to lend money in

Porto Rico. Such money is not employed in complainant's business, but, as shown in the record, is an investment within the Island presumably employed in their own business by residents in Porto Rico. The capital of the company here employed, even if it were supposed to be lending money, would more properly consist of the amount necessary to maintain an office or an agent here, if in fact it had any capital used in conducting the business of lending money.

It is also suggested that this tax, being imposed on mortgages on lands, is real property and taxable as such. The mortgage deeds are the mere security for the loan. The tax does not purport to be imposed on the mortgages themselves, but on the capital invested in loans secured by the mortgages. The essential nature of the things in existence are debts of people residing in Porto Rico owing to the complainant. They are credits in the hands of the complainant and, being such credits, they follow the person of the creditor. *Mobilia sequuntur personam* is a legal maxim which is strictly applicable.

In *Kirtland* v. *Hotchkiss,* 100 U. S., 498, the court says:

"That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. Nor is the debt, for the purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt, and, as held in *State Tax on Foreign-held Bonds,* the right of the creditor 'to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand, * * * has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the State when held by a resident therein,' etc. Cooley on Taxation, 15, 63, 134, 270. The debt, then, having its *situs* at the creditor's residence, both he and it are, for the purposes of taxation, within the jurisdiction of the State. It is, consequently, for the State to determine, consistently

with its own fundamental law, whether such property owned by one of its residents shall contribute, by way of taxation, to maintain its government." See also *Bank* v. *Sedgwick,* 104 U. S., 111.

In *Meyer* v. *Pleasant,* 41 La. Ann., 645, the court held that debts had their situs at the owner's domicile, even though reduced to judgment at the debtor's domicile, and were taxable only at the residence of the creditor.

In *Liverpool & London & Globe Insurance Co.* v. *Board of Assessors,* 44 La. Ann., 764, a case brought against an insurance company, the court quotes with approval from Cooley on Taxation as follows:

" 'Corporations, it is also conceded, may be taxed like natural persons on their property and business, but debts owing to foreign creditors, either corporations or individuals, are not the subject of taxation.

" 'The creditor can not be taxed, because he is not within the jurisdiction, and the debts can not be taxed in the debtor's hands through any fiction of the law, which is to treat them as being for this purpose the property of debtors. They are not the property of the debtors in any sense; they are the obligations of the debtor, and only possess value in the hands of the creditors. With them they are property, but to call them property in the hands of the debtors is simply a misuse of terms.' Com. v. Chesapeake & O. R. Co., 27 Grat. (Va.), 344; Oliver v. Washington Mills, 11 Allen (Mass), 268; Mayor, etc., of City of Macon v. Jones, 67 Ga., 489; San Francisco v. Mackey, [C. C.] 22 Fed., 602; Goldgart v. People, 106 Ill., 25; Kirtland v. Hotchkiss, 100 U. S., 496 [25 L. Ed., 558].

" 'The mere right of a foreign creditor to receive from his debtor within the State the payment of his demand can not be subjected to taxation within the State.' Cooley on Taxation, p. 15."

And see also the following monographic notes: 56 Am. Dec., 529, and 62 Am. St. Rep., 452, in the latter of which, among other pertinent remarks, the learned commentator says:

"*Taxation of Choses in Action, Generally.* It is a general rule, recognized not only in the State courts, but in the United States courts, that the *situs* of intangible personal property, such as choses

in action, notes, accounts, etc., is, for the purpose of taxation and in the absence of any statute fixing a different situs, at the domicile of the owner; and, if the legislature fails to fix the location of such property for taxation, it is evident that it must be held to be the domicile of the owner, in cases of corporations as well as of individuals or executors: Grundy County v. Tennessee Coal Co., 94 Tenn., 295, 317, per Wilkes, J.; monographic note to New Albany v. Meekin, 56 Am. Dec., 523–537; Matter of Bronson, 150 N. Y., 1; 55 Am. St. Rep., 632; State v. Earl, 1 Nev., 394; Kirtland v. Hotchkiss, 100 U. S., 491, 499; affirming Kirtland v. Hotchkiss, 42 Conn., 426; 19 Am. Rep., 546; Bonaparte v. Tax Court, 104 U. S., 592. The situs of particular choses in action for the purpose of taxation is discussed elsewhere in this note under appropriate heads.''

Thus it becomes clearly evident that a debt for the purposes of taxation has its situs at the domicile of the creditor, and it may be taxed as property there. It may, however, under certain circumstances be taxed by the State provided the State clearly indicates its intention so to tax. It makes no difference whether or not it is secured by mortgage, as we have seen in *Kirtland* v. *Hotchkiss, supra,* and this is a leading case about which the other decisions revolve, while following its course.

When a State wishes to tax credits held by persons outside the State, or at the domicile of the debtor, it must do so in plain language, as may be seen in the case of *Savings Society* v. *Multnomah County,* 169 U. S., 421. In that case the mortgage, in Oregon, is taxed because the interest of the mortgage is there regarded as real estate, to the amount of its value, and both mortgagor and mortgagee are required to pay taxes on their respective interests in the land according to its value. The tax is by the statute divided between them. This is different in Porto Rico, the tax on the land to its full value being here paid by the owner; and in this case the mortgage is regarded as personal property and taxed as such. In any event it is the statute which determines where the property is to be taxed.

The case of the *Liverpool, etc., Insurance Co.* v. *Orleans*

*Assessors,* 221 U. S., 346, was cited by the respondent to show that the State has such power, and this principle may be true, but there the State of Louisiana had made a clear provision of statutory law levying such a tax, and the court points out, referring to the Kirtland case, that in such case as that cited there had been no attempt by the Legislature to set aside the ordinary rule in respect to the matter of the situs of the debt at the residence of the creditor.

Not only does such an intention fail to appear in any legislation by The People of Porto Rico, but in section 290 of the Political Code, as amended, personal credits are specifically exempted. Hon. Foster V. Brown, Attorney General of Porto Rico, says:

"* * * when the Legislature in 1904 amended said section by providing that personal property shall not include book credits, promissory notes, nor other personal credits, it was the intention of the Legislature to exempt these classes of property from taxation, otherwise the amendment to the section would have been meaningless." 3 Opinions of the Attorney General of Porto Rico, 332.

The capital attempted to be taxed in this case being personal credits in the hands of the insurance company has not been made subject to taxation by the Legislature of Porto Rico, and the fact that it is secured by a mortgage, as we have seen, can make no difference, the Legislature having exhibited no intention to tax it as such. These considerations might dispose of the case, but in order to make our views clear in regard to the matter we will proceed to some further discussion.

We now pass to a constitutional question which should be disposed of in regular order. It is the following: Is section 329 of the Political Code, taken in conjunction with section 290 thereof, unconstitutional when construed as imposing taxes on mortgage credits in the hands of corporations, the same class of credits being exempt from taxation when

in possession of individuals whether resident in the Island or not?

Of course, in considering this question, we must bear in mind that a statute may be in itself perfectly in accordance with the Constitution, but if given a certain interpretation it will be found to conflict therewith. The first matter, then, to notice is whether or not there is anything in sections 290 and 320 of the Political Code of Porto Rico which, when properly read, would show them to be in conflict with the inhibition of the Fourteenth Amendment to the National Constitution, prohibiting the denial to any person of the equal protection of the laws. If it is not the intention of these two sections taken together to impose taxes on mortgages in the hands of corporations while the same are exempt in the possession of individuals, of course it cannot be claimed that there is any such denial. No such intention is apparent in these statutes and we cannot hold them to have such an effect. Hence it is easy to deduce the proposition that there is nothing in the statutes denying to any one the equal protection of the laws or inherently in contravention of this clause of the Fourteenth Amendment.

A similar constitutional question arises when we regard these mortgage credits as personal property, having their situs at the domicile of the owner in the State of Ohio and beyond the jurisdiction and the taxing power of Porto Rico, thus rendering their taxation the taking of property without due process of law, and thereby in contravention of another clause in the Fourteenth Amendment to the Constitution. It is admitted that this tax is levied on personal property. Its situs follows the person of the owner, whose domicile is outside of this Island. Our Legislature has no power to tax such property, hence an attempt to do so is a violation of the constitutional law. The collection of a tax under such circumstances would amount to the taking away of property from the owner without due process of law, contrary to the Fourteenth Amendment. 5 Thomp. on Corp., 726, 7 and 8.

*People* v. *Whartenby,* 38 Cal., 466; *People* v. *Eastman,* 25 Cal., 604; *Falkner, Bell & Co.* v. *Hunt,* 16 Cal., 171; *Delaware L. & W. R. Co.* v. *Penn.,* 198 U. S., 358; *Louisville Ferry Co.* v. *Kentucky,* 188 U. S., 385. Then we cannot presume that the Legislature intended that such an interpretation should be put on these statutes. They must be so construed as to keep them in line with the Constitution and preserve their validity, and not otherwise.

Of course, it is clear that according to one of the primary rules of interpretation sections 290 and 320 of the Political Code must be construed together to arrive at their meaning and ascertain the mind of the Legislature. Féd. Stats., Ann., p. xxvi; *McBroom* v. *Scottish Investment Co.,* 153 U. S., 323; *Pennington* v. *Coxe,* (2 Cranch) 6 U. S., 52.

It is quite as well established, as a canon of construction, that a state statute must be interpreted so as, if possible, to make it consistent with the State and Federal Constitutions and with valid acts of Congress. *Presser* v. *Illinois,* 116 U. S., 269. This principle has more than ordinary influence in cases where the Federal courts are asked to overthrow the revenue laws of a state. *St. Louis National Bank* v. *Papin,* 4 Dill. [U. S.], 32. And a state statute may be presumed to have been indicated in view of the prior decisions of the United States Supreme Court prescribing constitutional limits or legislation on the precise subject of the statute. *Banks* v. *Manchester,* 23 Fed. Rep., 145. See Fed. Stats. Ann., p. LXII.

Then we must inquire what was the intention of the Porto Rican Legislature in the passage of these statutes. It cannot be denied that, under section 290 of the Political Code, credits belonging to individuals are exempt from taxation. Can it then be claimed that the same class of property when in the hands of corporations, foreign or domestic, is subject to be taxed? Such is the contention of the respondent in this case. A discrimination like this between corporations and individuals appears to us to deny the former the equal pro-

tection of the laws. · Evidently, according to the interpretation put upon these statutes by the Treasurer of Porto Rico, corporations, or artificial persons, are required to pay taxes on property which would be exempt in the hands of natural persons; and such an interpretation of the statutes makes a discrimination which is denounced by the Fourteenth Amendment, so that such a construction of the statute cannot receive our approbation.   Then it certainly cannot be presumed to have been the intention of the Legislature to make a distinction of this kind.   We must adopt that interpretation of the statute which will harmonize it with the Constitution and preserve its validity.   *Wells* v. *Green Bay & Co.,* 90 Wis., 442; *State* v. *State Board of Assessors,* 48 N. J. L., 1; 5 Thompson on Corp., 708 and 709; 1 Cook on Corp., §8, pp. 39, 40 and 41.

Following a suggestion made by way of illustration during the oral argument in this court, we may answer the question following, to wit: Could bonds of The People of Porto Rico be taxed under the interpretation put upon sections 317 and 320 of the Political Code by the Treasurer? Such bonds are expressly exempt from the. payment of taxes under the statutes of this Island, but if the interpretation which the Treasurer put upon these statutes is correct and all personal property in the hands of foreign corporations, or domestic corporations either for that matter, is to be considered as a part of their capital stock for the purpose of taxation and is so included in making up the assessment, then the bonds of the Insular Government, although expressly exempt from taxation under other sections of the statute, would be included in the taxable property of the corporation owning them, just as well as mortgage credits or promissory notes or any other such property.   We cannot presume that the Legislature ever intended such a result from an interpretation of the statutes which they have made in regard to taxation, and it has been well settled that the intention of the Legislature to impose a ·tax upon mortgage credits ought

clearly to appear from the language of the law itself. *United States* v. *Wigglesworth*, 2 Story, 369; same case 28 Federal Cases, pp. 595–597, Case No. 16690.

We will next consider another point presented in the proper study of this case. It may be stated thus: But even assuming that the interpretation put upon these statutes by the respondent is correct, does the intention of the Legislature to tax the mortgage credits belonging to appellant *clearly* appear from the language of the statute itself?

On reading the statute we must confess that it is somewhat obscure, and we are relegated to the explanation given by the Attorney General for the meaning thereof placed upon it by the Treasurer. In reply to a question during the oral argument the distinguished counsel for respondent stated that these mortgage credits were considered by the Treasurer to be personal property and assessed by him for taxation as such. The former Attorney General, Hon. Foster V. Brown, says in regard to this act that it "is somewhat indefinite and uncertain, as to the liability of this class of property (personal credits, or mortgages) to taxation." 3 Opinions of Attorney General of Porto Rico, 329. We think the interpretation given by the Government in this case is sufficiently complex and that looking at the statute in the light of that interpretation the intention of the Legislature does not clearly appear, nor can we readily determine exactly what the intention of the Legislature in regard to taxation of mortgage credits belonging to foreign corporations may be. Then, according to the rule laid down in the Wigglesworth case above referred to, the law cannot be construed to tax such credits; on the contrary, as we have seen they cannot be taxed.

From the method which appears to be that in use in the Insular Treasury in making the assessments of the property of corporations for taxation we are called on to inquire: Can the franchises of a corporation be legally taxed merely by increasing the valuation of its personal property so as to

cover the franchise without a specific assessment on the franchises, as seems to be the interpretation put by the respondent on the purpose of section 317 of the Political Code?

Franchises, like other property, are taxable and they are to be taxed under our statute, section 290 of the Political Code. But in order to be taxed they must be properly assessed. The enumeration of personal property in the assessment for taxation should follow the classification used in the statute, but a specific itemized list of particulars is not necessary. *Falkner, Bell & Co.* v. *Hunt,* 16 Cal., 173. Merely lumping the whole remnant of taxable values in an item denominated personal property does not comply with the law prescribing the duty of the assessors and the Treasurer. The law requires that all property shall be assessed for taxation at its fair market value, and a fictitious assessment has no countenance in any of the States. Failing to tax the franchises of a corporation as such, and in lieu thereof increasing the valuation on personal property, or taxing personal property which has no local situs, cannot be regarded as a compliance with the law. Then we must answer this question in the negative.

It is important in the consideration of this case to clearly call to mind the distinction between real and personal property and to determine to which class the property on which these taxes were levied properly and really belongs. We are materially aided in the required classification by the language used in section 290 of the Political Code which defines real and personal property separately. Mortgages are not mentioned *eo nomine* in either class; but credits are classed as personal property, which also includes "all other matters and things capable of private ownership and not included within the meaning of the term real property." Then the property taxed herein must be classed as personal, and indeed the assessment itself made by the Treasurer so designates it. Besides, the counsel for the respondent in the oral argument stated that it was so regarded and treated in the

.defense made by him to the claim of the plaintiff. A mortgage is sometimes claimed to be an interest in the land covered thereby, but for purposes of taxation it is generally and properly considered as only a security for the debt and a mere incident thereto. The money at interest, debt or obligation, or as it is termed in our statute, the *credit*, is the principal thing on which the tax is levied. The mortgage has no existence independent of the credit secured thereby; when the debt is paid the mortgage expires. The credit is intangible and has no situs distinct from the residence of the holder. It pertains to and follows the person of the owner; and the mortgage being incidental and attached to the credit which is secured thereby takes the same course. *People* v. *Eastman,* 25 Cal., 604; *Falkner, Bell & Co.* v. *Hunt,* 16 Cal., 171; *People* v. *Whartenby,* 38 Cal., 466. Then the proper situs of the property on which these taxes are laid is in Cincinnati, Ohio, and beyond the jurisdiction of our Legislature for purposes of taxation as credits.

On examination of the findings of the trial court we must inquire into the correctness of the action of that tribunal in holding that the sum of $211,402, owned by the plaintiff and invested in mortgages on land in this Island represents the actual value of the capital employed by the insurance company in the transaction of business in Porto Rico. This is the amount of money lent on mortgages laid upon lands in Porto Rico, as shown by the records in the several offices of the registrars of property in the various districts. It represents correctly beyond a doubt the value of the capital owned by the insurance company in Porto Rico as shown by the mortgage credits, but this capital can hardly be said to be employed in the transaction of business in Porto Rico. It represents an investment and nothing more, and the only business which the insurance company transacts in regard to the said capital is to collect the interest as the same falls

due, and from time to time to collect the instalments of the principal when that may become due. A banking corporation making short loans and discounting commercial paper and selling exchange here may be said to have its capital employed in the transaction of business in this Island. So may a commercial or a commission house located here. But an individual or a corporation, foreign or domestic, which has an investment in the stock or bonds of a dock company or a sugar-growers' association cannot be so classed. Such an investment cannot be said to be employed in business in the proper and usual signification of those terms. Then it seems to us that this is an improper construction to put upon the statute, as has been done by the Treasurer of Porto Rico in making this assessment, and it should not prevail. This leads us to review another legal conclusion reached by the trial court and to inquire whether or not the capital of this insurance company, to the amount stated, can be properly regarded as employed in business here and as such subject to taxation for the fiscal year 1910–11. The plaintiff in this case is an insurance company with its domicile in the State of Ohio. It is not claimed by the respondent that, during the fiscal year 1910–11, the plaintiff was doing any insurance business in Porto Rico. Can it be said to be doing business in this Island merely because it has outstanding mortgages on land situated here? It has been held by many courts in the States that a corporation engaged only in leasing its property and investing its funds was not doing business so as to be liable to a tax therefor. A case involving this decision was presented to the Supreme Court of the United States lately, as is learned from the newspapers, and a review of the decision in the *Mine Hill Corporation Tax case* was refused. We do not think that under a fair interpretation of the statute of Porto Rico in regard to taxation that this capital of the insurance company can be regarded as em-

ployed in business here, merely because it is invested in loans secured by mortgages on lands situated in the Island. *People v. Harlan & Hollingsworth Co.*, 34 N. E. Rep., 753.

Finally, we arrive at the main question—that is, the correctness of the judgment rendered. Was the sum of $3,621.73 legally collected by the Treasurer of Porto Rico as taxes, surcharges, and costs due from the insurance company to The People of Porto Rico? It was levied, as is conceded, on personal property. Mortgages *eo nomine* are not included among the property taxed under our statutes. Credits are exempt from taxation by the terms of the Political Code. The situs of loans secured by mortgages on lands lying here must, in the absence of special statutory provisions, be considered to be fixed at the domicile of the owner. The legislative intention to tax such property as these mortgages, if it existed at all, does not clearly appear from the statute itself.; and there is a lack of legislative jurisdiction to tax property which has its legal situs beyond the territorial limits of this Island. So from the indication of our views on the preceding points we must answer this question in the negative and hold that the tax paid under protest and collected by the Treasurer of Porto Rico should be refunded, together with the surcharges and costs thereupon, with interest as prescribed by the statute.

The judgment of the district court in this matter should be reversed and a judgment rendered in this court in favor of the plaintiff for the amount of its claim including interest, without costs to either party.

*Reversed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice del Toro dissented.